## STATE ex rel. YOUNG, Appellant, v. YATES, Respondent.

[Submitted February 16, 1897.   Decided February 23, 1897.]

*Cities— Confirmation of Officers—Right of Mayor to Vote on a Tie.*

CONFIRMATION.—The laws of Montana provide that "The corporate authority of cities shall be vested in a mayor and in a board of aldermen to be denominated the city council, and in such other officers as are herein mentioned or authorized to be elected or appointed by the city council or mayor." (Compiled Statutes 1887, Division 5, C. 22, Laws 1893. page 130). Also, that in case of a tie in any vote or proceeding of the city council, the mayor shall have the casting vote (Laws 1893, p; ges 126-127); also, that "it shall require a majority vo e of all the members constituting the council to confirm city officers." *Held,* that the mayor is a constituent part of the council, and that, where there is a tie vote of the aldermen on the confirmation of an officer, he has the right to vote for confirmation.

SAME.—The city council was composed of the mayor and eight aldermen; all were present when the roll was called for confirmation; four aldermen voted in favor of confirming, the others did not vote and the mayor then voted for confirmation. *Held,* that the officer was legally confirmed.

*Appeal from District Court, Cascade County.   C. H. Benton Judge.*

PROCEEDING on the relation of David H. Young against Sol. Yates to determine the right to a city office.   Judgment for defendant, from which, and from an order denying a new trial, relator appeals.  ° Reversed.

Statement of the case by the justice delivering the opinion.

This action was brought by relator, Young, appellant here, to try the right of the defendant, Yates, to the office of city jailer of the city of Great Falls.   The material and undisputed facts developed the following conditions :   On June 24, 1895, at a regular meeting of the city council of Great Falls, the mayor nominated the relator, Young, as city jailer.   All the aldermen, eight in number, were present at the meeting, and the mayor presided.   Upon a vote for confirmation the c erk called t e roll.   Four aldermen voted "yea," and the other

four, though present, remained silent. The mayor voted "yea," and thus sought to confirm the relator. Thereafter the relator duly qualified as jailer, and demanded the keys and papers of the defendant. Upon a refusal to surrender, this action was brought. The district court adjudged that relator was not legally confirmed. From this judgment, and an order denying a new trial, relator appeals.

*Largent & Huntoon, Ransom Cooper* and *Douglas Martin,* for Appellant.

A provision in a charter or law that "the mayor and aldermen when assembled together shall constitute the council," makes the mayor a member of the council. (*People* v. *Harshaw,* 60 Mich. 200; citing also § 385, Chapter 22, Fifth Division of the Compiled Statutes, 1887, and § 347 *Id.,* as amended on page 123, Laws of 1893; §§ 324, 325, 367, Compiled Statutes, Fifth Division; *Carroll* v. *Wall,* 35 Kan. 36, Id., 10 Pac. 1; *Rushville Gas Co. v. City of Rushville,* 6 L. R. A. 315; *Rex* v. *Foxcroft,* 2 Burr 1017; 1 Wm. Bl. 229; *Warnock* v. *City of Lafayette,* 4 L. Ann. 419.)

*Leslie & Downing,* for Respondent.

Citing statute above cited, and *State ex rel.* v. *Gray,* 23 Neb. 577, 36 N. W. 577.

HUNT, J.—This case has been argued and briefed by both sides upon the single question of whether the relator was confirmed or not. And it is this question alone we shall decide. All the eight aldermen of the city were at the meeting of the city council on June 24, 1895. The mayor was also present. The council lawfully met. (Compiled statutes 1887, Fifth Division, C. 22, § 346.) In case of a tie in any vote or proceeding of the city council, the mayor had a casting vote; not otherwise. (Laws of Mont., 3d Sess., page 126, § 367.) The mayor is declared by the law to be the chief executive officer of the city, and, in addition to other duties imposed

upon him, he is required to preside at all meetings of the city council. This duty the mayor was duly performing at the meeting when relator's name was submitted to the council for confirmation. The mayor and board of aldermen together constituted the city council, in whom, by law, was expressly vested the corporate authority of the city. "The corporate authority of cities shall be vested in a mayor and in a board of aldermen, to be denominated the city council, and in such other officers as are herein mentioned or authorized to be elected or appointed by the city council." (Compiled Statutes 1887, Fifth Division, C. 22, § 385; Laws of Montana 1893, page 130.) Here is a plain statute declaring the mayor a part of the city council, with enumerated duties elsewhere defined, one of which is to preside over meetings of the council of which he forms a part. Considering the statutory provisions cited and others governing city authorities together, we cannot assent to the proposition that the city council is composed exclusively of the aldermen, and that they may ignore the mayor or deprive him of his right to preside, sit or vote therein in a case of a tie. The relations of the mayor towards the body of the council, the board of aldermen, are controlled by law. He has certain duties, rights and powers granted to him of an executive nature, yet he presides over and is a constituent part of the whole council exercising its legislative powers, but withal he has no right to vote except where the body over which he presides, the board of aldermen, tie in a vote or proceeding. (*People* v. *Harshaw* 60 Mich. 200, 26 N. W. 879.) A nomination to an office which requires confirmation by the members of the council, before becoming effective, necessarily demands a vote of the members constituting the city council who can vote. But, inasmuch as the mayor cannot vote unless there is a tie, the right to vote is necessarily restricted to the aldermen until that condition arises, when, by reason of a tie vote, the mayor may exercise his power, and confirm or reject.

We find no restriction in the law applicable to the matter of confirming officers. The provision (Laws 1893, § 347) re-

quiring a majority vote of all the members constituting the council to confirm city officers, does not expressly or by implication restrict the mayor's right to vote when the aldermen, who alone can vote ordinarily, are equally divided. But if, in voting, a tie arises, the mayor may give the casting vote, for an instance is then presented where he may exercise his power to do so, and thus determine the question before the council. Upon some matters—notably passing an ordinance over the mayor's veto—the law has required a vote of two-thirds of the whole number of councilmen elected. In such a contingency the statutes have intentionally excluded the mayor from voting; and if the legislature had intended to deny him the right to vote where a tie arises upon a confirmation, the purpose of the legislature would have been easily expressed by similar language requiring for confirmation a vote of a majority of the whole number of councilmen elected. But it has not so provided, and by the manifest difference in the statutes in respect to the votes upon ordinances passed over the veto of the mayor and those respecting appointments, we are confirmed in the belief that the legislature purposely did not mean to exclude the mayor from casting his vote in case of a tie in a confirmation as well as in cases of a tie in other matters. (*Carroll* v. *Wall*, 35 Kan. 36, 10 Pac. 1.) The case of *State* v. *Gray*, 23 Neb. 365, 36 N. W. 577, relied on by respondents was decided upon an ordinance which expressly required a concurrence of a majority of all members elected. It, therefore, is inapplicable to this case.

In the foregoing reasoning we have proceeded in part upon the hypothesis that the four aldermen who remained silent when their names were called to vote upon the question of confirmation were not only properly counted as present, but were also correctly regarded as voting in the negative, and so made a tie. Certainly the respondent cannot contend for any better position than is granted him by this assumption. It is an exploded notion that a member of a legislative body such as a city council can be present at a meeting, thus helping to make a quorum of the body, yet defeat the progress of legis-

lation by refusing to vote when the roll is called. Experience has demonstrated that it is unreasonable to permit the physical to be disunited from the official being under such circumstances. Such a practice oftentimes might give to one member, and frequently to an attending minority, an opportunity to accomplish by silence what could not be done by speech, and often render presence, though inactive, more powerful than entire absence. The courts, as well as law writers and parliamentarians generally, have adopted the more rational rule that if a member of such a body join in making a quorum, and sit, his duty is to vote (unless excused for cause), and he will be counted as present whether or not he refuses to answer to the roll call. ''What the propriety of giving to a refusal to vote more potency than to a vote cast,—of allowing a gain from violation of duty, in making the refusing to vote of more effect in governing the action of the body of which one is a member than voting?'' (*Launtz* v. *People*, 113 Ill. 144.) Thus far the recent authorities are pretty well agreed. (Horr & B. on Mun. Ord. § 43; Beach on Pub. Corp., § 289; Tied. on Mun. Corp., § 99.) The Supreme Court of the United States, in the late case of *United States* v. *Ballin*, 144 U. S. 1, 12 Sup. Ct. 507, have also decided that when a majority of the house of representatives are present the house is in a position to do business. '' Its capacity,'' say the court, '' to transact business is then established, created by the mere presence of a majority, and does not depend upon the disposition or assent or action of any single member or fraction of the majority present. All that the constitution requires is the presence of a majority, and, when that majority are present, the power of the house arises.'' There is some divergence, however, among the cases upon how to exactly construe the action of such a present member who refuses to vote. It was apparently held in the case of *Launtz* v. *People*, *supra* (decided in 1885), under a city charter which gave the mayor a right to vote only in a case of a tie, that if four out of the eight councilmen voted in the affirmative, and the other four, though present, refused to vote either way, the mayor might treat

those not voting as opposed to those who had voted, and decide the matter by voting in the affirmative. But in the later case of *Rushville Gas Co.* v. *City of Rushville* (Ind. Sup.) 23 N. E. 72, a somewhat different view was expressed, the court holding, after a review of cases, that the law is that the members present and not voting assented to the adoption of the matter then before the council. There are in some states some distinctions recognized between nominations for office and business proceedings, but it would seem that the statutes of this state do not make any such discriminations. We are inclined to the opinion that the proper rule is that those who remain silent shall be deemed to assent to the act of those who do vote. (Ang. & A. on Corp., § 127; *State* v. *Green*, 37 Ohio St. 227; Willc. on Corp., § 546; *County of Cass* v. *Johnston*, 95 U. S. 360.) This view accords with the tenor of the decision of the United States Supreme Court cited above, and is laid down by the authorities relied upon in their opinion. If this be correct, then it would seem the relator in this case was confirmed by the virtual consent of those who did not vote; and, there being no tie, the mayor's action was unnecessary. But we can safely rest our decision upon the assumption that there was a tie, and for the reasons heretofore given on that branch of the case, the judgment and order appealed from are reversed, and the cause is remanded with directions to the lower court to enter judgment in favor of relator and against respondent's right to the office of city jailer.

*Reversed.*

PEMBERTON, C. J., and BUCK, J., concur.