**RUSSELL et al. v. MURPHY.**

No. 26021.   March 10, 1936.

Rehearing Denied June 16, 1936.

Albert C. Hunt and Pierce, McClelland, Kneeland & Bailey, for plaintiff in error J. Ben Russell.

Harlan Deupree, Municipal Counselor, and A. P. Van Meter, Asst. Mun. Counselor, for plaintiff in error J. L. Beveridge.

Armstrong & Murphy and Bliss Kelley, for defendant in error.

CORN, J. This is an appeal from the district court of Oklahoma county and involves the validity of a zoning ordinance of Oklahoma City under which certain property, formerly zoned for residential purposes, was by action of the city council transferred from the residence or U-1 zone to the U-9 or community business zone, and the validity of a building permit issued by the superintendent of buildings of said city to the plaintiff in error, J. Ben Russell, authorizing the construction of a business building on the property so rezoned.

The defendant in error, William L. Murphy, brought this action against the plaintiffs in error to enjoin the construction of a business building under said permit, and to cancel the permit. The plaintiff in the court below alleged that the ordinance was void for a number of reasons, and the court found the issues in favor of the plaintiff and granted a permanent injunction. From such final judgment and order overruling the motion for a new trial, this appeal is prosecuted.

The defendant in error contends that the ordinance was not passed by the required majority of the members of the legislative branch of the government of the city as required by the Oklahoma city charter and by the statute, and, lacking the required vote in favor of the ordinance, the same is void, and the building permit issued thereunder is also void.

Section 1 of article 2 of the Oklahoma City charter provides as follows:

"Legislative Department.—The Legislative branch of the city government shall consist of a city council composed of two councilmen from each ward and the mayor. * * *"

And section 6174, O. S. 1931, with reference to amending a zoning ordinance, provides:

"Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change, signed by the owners of 20 per cent. or more either of the area of the lots included in such proposed change, or by the owners of 20 per cent. or more of the area of the lots immediately abutting either side of the territory included in such proposed change, or separated therefrom only by an alley or street such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

It appears that a sufficient protest was filed by property owners, and that the ordinance was adopted by the vote of six of the eight members of the city council, but defendant in error contends that is insufficient by reason of the fact that the charter makes the mayor a constituent part of the legislative branch of the city government, and therefore the legislative branch consists of nine members, and the six members voting in favor of the amendment falls short of the required vote of three-fourths of all the members of the legislative body.

In the case of Horner v. Rowley, 51 Iowa, 620, 2 N. W. 436, section 511 of the Code provided that the mayor, recorder, and five trustees constituted the council of incorporated towns, and that any five of such council should be a quorum for the transaction of business. By section 489 it was provided that:

"Ordinances of a general or permanent nature shall be fully and distinctly read on three different days unless three-fourths of the council shall dispense with the rules."

At a meeting of the council there were present the mayor, the recorder, and four trustees. An ordinance for licensing the sale of native wine and beer was read before the council, and a motion was offered that the council dispense with the second and third readings of the ordinance. The four trustees voted in the affirmative. No vote was cast in the negative. The mayor decided

that the motion carried and the ordinance was declared passed. The Supreme Court of Iowa, in holding that the ordinance was not legally enacted, said, after quoting the above statutory provisions:

"The council therefore consists of seven members. * * * As four, the number who voted to suspend the rule and pass this ordinance, is not three-fourths of seven, it follows that the ordinance was not legally enacted. It was, therefore, void and no valid act could be done, under its provisions."

The foregoing case was followed in Griffin v. Messenger, 114 Iowa, 99, 86 N. W. 219, the syllabus of which reads as follows:

"Under Code 1873, sec. 531, making the mayor of a city of the second class a member of the city council, he is to be regarded as a member for all purposes, though only voting in case of a tie; and hence, under section 489, requiring ordinances levying special assessments to be read on three successive days unless three-fourths of the council shall vote to dispense with the rule, a vote of five members of a council composed of six councilmen and the mayor is insufficient to suspend the rule, and an ordinance passed in pursuance of such action without being read on three successive days is invalid."

At page 219 of the Northwestern Reporter, the court says:

"The mayor was by law made a constituent part of the city council. How it is possible to eliminate him in determining the number of persons composing the council, we are unable to see. It is true, he had a vote only when there was a tie; but this restriction upon his power to vote rendered him none the less a component part of the council, under the law. The language of the statute is clear and unambiguous where it declares that such ordinances shall be read on 'three different days unless three-fourths of the council shall dispense with the rule.' It does not say three-fourths of the council, excluding the mayor, nor three-fourths of the council ordinarily voting, and to give it the construction contended for by the appellant would require judicial legislation. Horner v. Rowley, 51 Iowa, 620, 2 N. W. 436. See, also, Cochran v. McCleary, 22 Iowa, 75; State v. Yates (Mont.) 47 P. 1004, 37 L. R. A. 205; Dill. Mun. Corp., secs. 260, 261. The ordinance was void."

In the case of State ex rel. Jebens v. Noth (Iowa) 151 N. W. 822, a similar question was involved. In the syllabus the court held:

"Under Code Supp. 1913, sec. 937, providing that in any city of 20,000 or more the council shall consist of a mayor, two aldermen at large, and one from each ward, and that vacancies shall be filled by the remaining members of the council by a majority vote thereof, a vacancy in a council of nine members, leaving eight, could not be filled except by a majority of five; and hence a candidate receiving four votes to three for his opponent, the mayor not voting, was not elected."

In the course of the opinion, the court says:

"By the express language of this statute, then, the mayor was a member of the council, and prior to Bowden's death there were nine members of that body. After the vacancy was created by his death, there remained eight members, and no strained construction is exacted in saying that the vote of a majority of these—that is, of five of them—was essential to the election of some one in his stead. Had only a majority of the aldermen or of those voting been intended, a different conclusion must have been reached. But the statute first declares who shall constitute the council, and makes it include the mayor, and then fixes the number of votes essential to the filling of vacancy; i. e., a majority of the council so constituted. Whether the mayor shall vote or not is entirely immaterial in determining the number requisite to election, and for this reason the section of the special charter of the city, saying, 'The mayor shall have the casting vote, and no other,' is not pertinent, and whether he might properly have voted is not involved. The precise question before us was decided in Horner v. Rowley, 51 Iowa, 620, 2 N. W. 436, where four trustees were held not to be three-fourths of the council composed of mayor, recorder, and five trustees. This decision was followed in Griffin v. Messenger, 114 Iowa, 99, 86 N. W. 219, and appears to express the rule generally approved. People v. Herring, 30 Colo. 445, 71 P. 413; Whitney v. Common Council of Hudson, 69 Mich, 189, 37 N. W. 184; State v. Cook, 62 N. J. Law, 84, 40 Atl. 781. See State v. Yates. 19 Mont. 239, 47 P. 1004, 37 L. R. A. 205."

In the case of People v. Wright (Colo.) 71 P. 365, it is held:

"Under Session Laws 1901, pp. 384, 385, providing that the city council, by a majority vote of all the members, shall select successors to aldermen whose term of office shall expire, the mayor, when a member of the council, may vote for such officers, though other statutes provide for his voting only in case of a tie."

In reference to the mayor's position, the court says, at page 366 of 71 Pac.:

"Neither is it material to determine whether or not the act in question repeals, or is in any manner repugnant to, antecedent provisions of the law relating to municipal corporations, which provide that the mayor shall only vote in case of a tie. The act is complete in itself; was passed for a special purpose; the mayor is ex officio a

member of the city council; and by the express terms of the act he was given authority to vote to fill vacancies occasioned by the expiration of official terms in April, 1902; and hence, any limitation which might exist as to his right to vote upon other matters proper for the council to consider is not involved in this case. There were but four aldermen holding over on the 14th of April, 1902. The aldermen, with the mayor, whose official terms will not expire until April, 1903, constituted the council, a body of five members. Three was a majority of this number. This majority all voted for defendant, and, for the purpose of electing him, constituted a quorum. * * *"

Likewise, in the case at bar, the zoning statute of 1923 is complete in itself and was passed for a special purpose. This act is explicit in imposing an additional restriction, and requiring a three-fourths vote of all the members of the legislative body.

In People ex rel. Ralston v. Herring (Colo.) 71 P. 413, it is held in the first paragraph of the syllabus:

"Under Sess. Laws 1901, pp. 384, 385, providing that the successors of aldermen and city attorneys of cities of the second class elected in 1900 shall be selected by a majority vote of 'all' the members of the city council as it shall exist on the date, when according to the law under which such aldermen were elected, their terms expire, held that, there being five hold-over aldermen, and the mayor being a member of the city council, three of the aldermen cannot elect a city attorney or the successors to the aldermen elected in 1900."

The court says, at page 414 of 71 Pac.:

"The laws of 1901 (Session Laws of that year, pp. 384, 385) provide that the successors of aldermen and city attorneys of cities of the second class, elected in 1900, should be selected by a majority vote of all the members of the city council as it existed on the date when, according to the law under which such aldermen were elected, their terms had expired. Counsel for relator contend that in selecting aldermen to succeed those elected in April, 1900, and in the selection of a city attorney, the mayor had no right to vote, except in case of a tie, and that a majority vote, only, of the hold-over aldermen, was required to select these officials. This proposition has been decided adversely to the contention of relator in People v. Wright (Colo. Sup.) 71 P. 365. The Act of 1901, which provided for the election and terms of office of certain designated officials of cities of the second class, was passed for a particular purpose. According to its terms, the members of the city council whose terms had not expired were created a special body clothed with the right to exercise powers which they did not before possess, by being

authorized to select the successors of all city officials whose successors, except for the Act of 1901, would have been elected in April, 1902. For this purpose the act provided that such officials should be selected by a majority vote of all members. The mayor is unquestionably a member of the city council (section 4486, 2 Mills' Ann. St.) and, when the Legislature declared that all such members should vote to fill vacancies contemplated by the act, it certainly included him. Therefore, it is wholly unnecessary to consider in what circumstances, in the transaction of other business, the mayor may have the right to vote, or whether antecedent laws, which purport to vest him with this authority, are valid or invalid, because his right to vote in this instance rests solely upon the provisions of the act under which he assumed to do so for the purposes therein contemplated. * * *"

In the case of Redmond v. Incorporated Town of Sulphur, 32 Okla. 201, 120 P. 262, is involved the construction of an Indian Territory statute, to wit:

"All by-laws, ordinances, resolutions or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation. All by-laws and ordinances of a general or permanent nature shall be fully and distinctly read on three different days, unless two-thirds of the members composing the council shall dispense with the rule. * * *"

At pages 202-203, page 263 of 120 Pacific Reporter, the court said:

"The corporate authority of the town was at that time vested in one mayor, one recorder, and five aldermen, who constituted the council of the incorporated town. Mansf. Dig. sec. 792. At the meeting at which the ordinance was passed, there were six present, four of whom voted to suspend the rules and pass the ordinance. By the section quoted, the ordinance, being of a permanent nature, was required to be fully and distinctly read on three different days, unless two-thirds of the members composing the council should vote to suspend the rule. Four are not two-thirds of seven and therefore the question arises whether 'the members composing the council' are the members present or all members composing the council.

"We are not referred to any authority by counsel for either side, nor do we find any Arkansas case, construing this statute. We therefore give it the interpretation which its words seem to us to mean, namely, two-thirds of the members composing the council, whether present or absent. By section 792 of Mansf. Dig. 'such mayor, recorder and alderman (five) shall constitute the council of the incorporated town.' There is not much difference between the expression 'constitute the council' in section 792 and the expression 'composing the council' in section

924, and if these seven persons composed the council, then it is manifest that two-thirds of them did not vote to suspend the rule, and therefore the ordinance is invalid. * * *"

In Carrolton v. Clark, 21 Ill. App. 74, it is held that the mayor of a city, a though not an alderman, is nevertheless a member of the legislative body designated as the council. The statutory provision there provided that "the city council shall consist of the mayor and aldermen," just as our charter provides that the legislative branch shall consist of the councilmen and the mayor. It was also provided that the mayor should preside at all meetings of the city council, but shall not vote except in case of a tie. The court said that "it is not claimed that the mayor is an alderman, but it is not perceived that he need be in order to be a member of the council." Likewise, we do not claim that the mayor is a councilman, but it is not necessary that he be such in order to be a member of the legislative body of Oklahoma City.

In Harrison v. Campbell (Ark.) 254 S. W. 438, it is held in the fifth paragraph of the syllabus:

"Under Crawford & Moses' Digest, sec. 7671, providing that the corporate authority of incorporated towns shall vest in a mayor, a recorder, and five aldermen, who shall constitute the council, the mayor and recorder are as much members of the council as are the aldermen, and can vote on the passage of ordinances."

Municipal charters do not always agree on the constituents of the governing body. Whether the mayor shall be regarded as a member of the legislative body depends upon the terms of the charter or law under which the municipality is organized. In the instant case the mayor is made a component part of the legislative branch of the municipal government by the plain and unambiguous provision of the charter; and the section of the statute, supra, providing the method and procedure for amending a zoning ordinance is equally plain and unambiguous in its terms requiring a favorable vote of three-fourths of all the members of the legislative body in order to amend a zoning ordinance over the protest of 20 per cent. of the property owners affected. And in view of the provisions of the charter and of the statute and the construction placed upon similar provisions in jurisdictions where this question has been adjudicated, it is imperative that this court hold that the ordinance was not adopted by the necessary three-fourths vote of all the members of the legislative body as required by the statute. It necessarily fol-

lows that the ordinance is invalid and the building permit issued thereunder is without force and effect.

In view of our ruling on the question discussed, we deem it unnecessary to discuss or to rule upon the various questions presented by this appeal.

The judgment of the trial court is affirmed.

BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur. OSBORN, V. C. J., concurs in conclusion. RILEY, J., not participating. McNEILL, C. J., and WELCH, J., absent.