## IRA N. EUBANKS v. STATE.

### No. A-924.   Opinion Filed April 4, 1911.

### (114 Pac. 798.)

1.  **INDICTMENT AND INFORMATION—Finding of Indictment—Concurrence of Grand Jurors.** Under the provisions of the Bill of Rights, section 18, and section 6687, Snyder's Sts., an indictment cannot be found except by the concurrence of at least nine grand jurors.

2.  **SAME—"When it is Not Found."** By the language contained in section 6738, Snyders Sts., "When it is not found," is meant when not concurred in by at least nine grand jurors.

3.  **INDICTMENT AND INFORMATION—Presumptions—Regularity of Indictment.** When an indictment is duly returned as "a true bill" properly indorsed, the presumption is that it was regularly found on legal and sufficient evidence, with due deliberation, and by the concurrence of the requisite number of grand jurors; however, this presumption is not conclusive.

4.  **INDICTMENT AND INFORMATION—Setting Aside—Hearing—Competency of Grand Jurors.** A grand juror is not permitted to testify how any member of the jury voted, or the opinion expressed by any of them upon any question before them, but he may be required by the court to testify in support of a motion to set aside the indictment, whether or not a vote or ballot was taken showing the concurrence of the necessary number of grand jurors to find a true bill.

5.  **INDICTMENT AND INFORMATION—Finding of Indictment—Necessity for Ballot.** The law requires that the concurrence of the necessary number of grand jurors be indicated by a vote or ballot, showing direct approval of each indictment, and, if a separate vote or ballot is not taken, then there can be no lawful concurrence of the necessary number of grand jurors.

6.  **SAME—"Concurring" — "Concurrence" — Assent — Consent.** The words "concurring" and "concurrence," as used in the constitu-

tional provision and the statute, construed to mean "assent" or "consent," indicated by affirmative action on the part of the grand juror by vote or ballot, showing direct approval.

7.  **SAME—Case.** Where it appears from the evidence offered in support of a motion to set aside the indictment that only three votes or ballots were taken by the grand jury in finding sixteen indictments, such indictments were not legally found with the concurrence of the requisite number of grand jurors, and are therefore void, and not true bills.

8.  **SAME—Motion to Quash—Evidence.** Where the evidence offered in support of a motion to set aside the indictment shows beyond a reasonable doubt that the indictment, apparently legal and formal, had not in fact the sanctions which the Constitution and the statutes require, it is the duty of the court to protect the defendant in his constitutional prerogatives and statutory rights by sustaining the motion to quash and set aside the indictment.

(Syllabus by the Court.)

*Appeal from District Court, Pittsburg County; Robert M. Rainey, Judge.*

Ira N. Eubanks was convicted of forgery, and he appeals. Reversed and remanded, with instructions.

*W. H. Fuller, Geo. M. Porter,* and *Mr. Eubanks,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE. Plaintiff in error, Ira N. Eubanks, was indicted, tried, and convicted of a violation of section 2565, Snyder's Sts., and was sentenced to serve a term of three years in the penitentiary. The judgment and sentence was entered on June 15, 1910. An appeal was perfected by filing in this court on October 3, 1910, a petition in error with case-made attached, together with proof of service of notices of appeal.

Upon arraignment the defendant demurred to the indictment. The demurrer was overruled, and the defendant was then permitted to file motion to set aside and quash said indictment. Said motion is as follows:

"Motion to Set Aside and Quash Indictment. Now comes Ira

N. Eubanks and moves the court to set aside and hold for naught indictment No. 674, which was filed in this court on the 29th day of November, 1909, and is entitled 'Indictment for making false certificate of acknowledgment,' for the following reasons: (1) That said indictment was not found indorsed, presented, or filed as prescribed by the statutes of the state of Oklahoma. (2) That the names of the witnesses indorsed upon said indictment are not the witnesses examined before the grand jury, and upon whose testimony said indictment was found. (3) That the indictment was not found by competent authority, and that there was no legal or competent evidence before the grand jury that returned said indictment upon which to base the same, and that said indictment was in violation of the constitutional rights of said defendant, and contrary to the statutes of the state of Oklahoma, and without due process of law, and is void. (4) For a further reason for setting aside and quashing said indictment, the defendant herein says that the grand jury which found said indictment received incompetent, irrelevant, hearsay, and secondary testimony in order to receive any testimony which would authorize or warrant them to return said indictment into this court; and that without said illegal, incompetent, and irrelevant, hearsay, and secondary evidence, there was no testimony introduced whatever before said grand jury which proved or tended to prove the charge set out in the indictment. (5) This defendant, for a further reason for setting aside and quashing said indictment, says that there was no testimony before said grand jury that proved or tended to prove that the defendant herein was a notary public, or that he was an officer authorized to take the acknowledgment of the instrument set out in the indictment. (6) That said indictment was not found upon the testimony of the witnesses whose names are indorsed upon the back of the same; that F. J. Bonesteel was not examined before the grand jury in reference to this indictment, nor was the witness A. G. Cochran examined in reference to this indictment, nor was any statement made by either of said witnesses which showed or tended to show that said defendant was an officer authorized to take such acknowledgment as alleged in said indictment; that John O. Toole was never before said grand jury, nor was his evidence before said grand jury in any other manner provided for by law; and that the testimony of R. E. Lee, the only other witness endorsed upon said indictment, did not prove or tend to prove the allegations alleged in the indictment. Where-

fore defendant respectfully moves this honorable court to set aside and hold for naught said indictment and that he be discharged according to the statutes in such cases made and provided. Fuller & Porter, Attorneys for Defendant. Ira N. Eubanks being first sworn says.that he is the defendant named in the indictment mentioned, and that the matters and things set forth and contained in said motion are to the best of his belief true, and that this motion is made in good faith in order that justice be done. Ira N. Eubanks. Subscribed and sworn to before me this 7th day of March, 1910. W. B. Riley, District Clerk, By C. L. Hefley, Deputy Clerk."

The defendant, on the same day, filed his application in said court praying for an order to examine witnesses in support thereof. Which application was allowed by the court, and a hearing upon the motion was had before the court and the motion to set aside and quash was overruled and exception allowed. The defendant now urges this ruling of the court as ground for the reversal of the judgment against him.

It appears from the testimony taken in support of the motion to set aside that the grand jury voted but three times in finding sixteen indictments, returned against the defendant, and Elder and Eubanks; that they never read any of these indictments, and did not know what they charged, except as the titles indicated. The testimony is voluminous, but that they voted but three times is uncontradicted.

Lewis Henry, clerk of the grand jury, testified in part as follows: That his notes show that indictments numbered 674 to 687, inclusive, were found and entitled as follows: State of Oklahoma v. Ira N. Eubanks—False acknowledgment. State of Oklahoma v. Elder & Eubanks—Uttering of J. W. Spurt deed. Same title—Forgery of J. W. Spurt deed. Same title—Forgery of mortgage. Same title—Uttering of mortgage. Same title— Forgery of note. Same title—Uttering of note. Same title— Forgery of Mike Miller deed. Same title—Uttering of Mike Miller deed. Same title—Forgery of Honore Mullor deed. Same title—Uttering of Honore Mullor deed. Same title—Utter- ·

ing of Louisiana Realty Company deed. Same title—False pretenses to R. E. Lee. State of Oklahoma v. Elder, Eubanks & Elder—Conspiracy. Each indorsed as, "A true bill," November 29, 1909. He further testified as follows:

"Q. Weren't these written down on page 122 and then just read over, then a vote taken that the grand jury authorize the county attorney to prepare indictments in all those cases and one vote taken on the entire bunch? A. Not to my knowledge. Q. You don't remember it that way? A. No, sir. Q. But you can't pick out any particular indictment that there was a separate vote on.? A. No, sir. Q. So, now, you don't know which ones you voted and which ones you didn't? A. Three anyway, but I don't know whether I could pick them out unless I could hear the evidence again, that I know were voted on separately, but I don't think all of them were."

J. W. Dobbins, foreman of the grand jury, testified:

"Q. The way I remember, the way we found these indictments, we voted on them as we found them. I don't remember how we could vote on all of them at once. I don't really believe we did. I don't remember now just exactly how it was."

C. K. Dobyns, a member of the grand jury, testified:

"Q. Were you present at all of the meetings of that grand jury? A .Yes, sir. Q. In getting the testimony before the grand jury in reference to the Elder & Eubanks indictments I will ask you whether all of the testimony was heard in reference to all of the cases and then votes taken, or whether the testimony was taken and introduced in reference to each separate case. A. Well, it was just this way: We would hear some of the evidence in that case, and then we would wait a day or so. Sometimes or other we could not get the witnesses, and we would lay them aside, and we did a whole lot of other work right along, and when we got done with that we would go back over each case and take it up separate, and sometimes we could not remember just how it was, the testimony, and the clerk would have to call it up and get it started in going back over it that way, and we balloted on some of the cases, we thought in order to get through with it, part of it, somebody suggested if they were guilty in one they were guilty in all, and we just lumped it in altogether in order to get through. I don't remember just who that was, I believe it was the foreman. I think we balloted about three times. Well, I know we

didn't ballot in all the cases. Q. There were some thirteen or fourteen indictments returned altogether against them? A. I can't tell you how many there was. Q. How many times did you vote on the thirteen or fourteen indictments? A. Some two or three times. Some particular cases that I remember and the others, it was a case that I didn't understand just exactly, the evidence kind of covered it, and we talked them over; but I don't remember how many cases they got against them. There was so much of it. Q. Then, you didn't take a separate ballot on each indictment that you returned against Elder & Eubanks? A. We never balloted over two or three times, I think about three times."

The most favorable construction that can be placed on the testimony of these grand jurors, the only grand jurors testifying, is that only three votes were taken by the grand jury on all of the Elder & Eubanks indictments, the case at bar being among fourteen true bills voted by one ballot. The minutes of the grand jury show that these sixteen indictments against Elder & Eubanks charge five separate and distinct forgeries, seven separate and distinct utterances, one false pretense, and one of conspiracy, while another indictment charging false pretense and another charging conspiracy, of which there is no record on the minutes, were at the same time returned by the grand jury.

It is contended that, by reason of the fact that the grand jury did not vote separately on this indictment, the indictment was not found as prescribed by the statutes of this state; that by reason of the provisions of section 6738, Snyder's Sts., the motion to set aside and quash the indictment should have been sustained by the court. Said section provides in part as follows:

"The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion in either of the following cases: First. When it is not found, indorsed, presented or filed, as prescribed by the statutes of the state. * * * Second. When the names of the witnesses examined before the grand jury are not made to appear on some part of the indictment as provided by law. * * * Third. * * * *To enable the defendant to make proof of the matter set up as grounds for setting aside the indictment, the defendant may file his application before any

court of record in the county, setting out and alleging that he is indicted in the district court, naming it, and setting out a copy of his motion to set aside the indictment and alleging, all under oath, that he is acting in good faith, and praying for an order to examine witnesses in support thereof. The court shall thereupon issue subpœnas to compel any or all witnesses desired to appear before him at the time named, and shall compel the witnesses to testify fully in regard to the matter and reduce the examination to writing, and certify to the same, and it may be used to support the motion. * * * All witnesses, including grand jurors, shall be bound to answer fully, and shall not be answerable for the testimony so given in any way, except for the crime of perjury committed in giving such evidence. * * * "

Section 6687, Snyder's Sts., provides:

"An indictment cannot be found without the concurrence of at least nine grand jurors. When so found it must be indorsed 'A true bill,' and the indorsement must be signed by the foreman."

Section 18 of the Bill of Rights provides:

"A grand jury shall be composed of twelve men, any nine of whom concurring may find an indictment or true bill."

When an indictment is duly returned as a true bill, properly indorsed, with the signature of the foreman, the presumption is that it was regularly found on legal and sufficient evidence with due deliberation, and by the concurrence of the requisite number of grand jurors; however, this presumption is not conclusive. The Legislature has seen proper to provide for what causes an indict-- ment must be set aside by the court upon the motion of the defendant, if made at the proper time. And under the provisions of the Bill of Rights and section 6687, above quoted, the indictment can be found only by the concurrence of at least nine grand jurors. By the language contained in section 6738, "when it is not found," is meant when not concurred in by at least nine grand jurors.

Under the provisions of the foregoing statute (section 6738, Snyder's Sts.), the testimony of grand jurors may be received to show that the indictment was not legally found by the grand jury, and if under a misapprehension of the law, or otherwise, the indict-

ment was found without a concurrence of at least nine of the grand jurors, it is void, and not a true bill. And the court, while recognizing the presumption of regularity which such a judicial record imports, must, under the statute, when proper proof is made in support of a motion to set aside the indictment, showing that the record has been erroneously or falsely made, whether by inadvertency or otherwise, set aside and quash an indictment so illegally, wrongfully, and fraudulently returned and presented.

It is as much the duty of the grand jury to protect the innocent as to accuse the guilty. It should shield the citizen alike from the false accusation of private malice and the passion of public clamor. It should never be used for the gratification of personal ill will or hatred, or to promote the secret plottings of power, party, or faction, to defame the name, or to disgrace those whom public or private enemies wished to destroy. For those and many other reasons, its proceedings should be had with that deliberation and dignity that the importance of its functions require.

As was said by Mr. Justice Tarsney, in the case of *Royce v. Territory,* 5 Okla. 61, 47 Pac. 1083:

"As the grand jury is an informing and accusing body, which makes its investigation and holds its deliberations in secret, and irresponsible for its official action upon matters of fact, except before the tribunal of public opinion, it is very important that its powers, duties, and methods of procedure should be well understood and should be strictly confined within the conservative and salutary limits imposed by law, which experience has shown to be necessary to subserve the public good, and to accomplish a just and impartial administration of the criminal law."

Mr. Rice, in his work on Criminal Evidence, vol 3, p. 40, says:

"The jealousy, with which the early law guarded the secrets of the grand jury room, has largely disappeared. The sacramental character of that august body is very imperfectly recognized at the present day. The theory that the proceedings before this body are beyond the scrutiny or condemnation of court or counsel is a foolish pretense that is very generally abandoned. Malice, corruption, and ignorance frequently combine to impress upon

the proceedings of this body the tyrannical and oppressive functions of the Star Chamber and the Council of Ten. And to say, or even intimate, that, where corrupt practices exist, there is no method open for their proper disclosure, is simply to insist that our criminal law is crippled with a hideous deformity."

The common-law rule of secrecy has no place under the provisions of our criminal procedure, which recognizes personal constitutional right as superior to every other consideration, and, whenever it becomes essential to the ends of justice to ascertain what has occurred before a grand jury, it may be shown by the testimony of the grand jurors, and particularly whether or not a vote or ballot was taken showing the concurrence of the necessary number of grand jurors to find a true bill; the only limitation being that a grand juror will not be permitted to testify how any member of the jury voted or the opinion expressed by any of them upon any question during their investigations.

In the proceedings had in this case, evidently the grand jury did not proceed with that deliberation that the law requires. The law requires that the concurrence of the necessary number of grand jurors be indicated by a vote or ballot on each indictment, and, if a separate vote or ballot is not taken, then there can be no lawful concurrence of the necessary number of grand jurors. As we understand the words "concurring" and "concurrence" as used in the constitutional provision and the statute, they mean "assent," or "consent," indicated by affirmative action on the part of the grand juror, by vote or ballot, showing direct approval. That was not done in this case. The testimony upon the motion to set aside shows beyond a reasonable doubt that the indictment, apparently legal and formal, had not in fact the sanctions which the Constitution and the statutes require. In such cases it is the duty of courts to protect the citizen in his constitutional prerogatives and statutory rights.

Our conclusion is that, for the reasons stated, the trial court erred in overruling the motion to set aside and quash the indictment.

Reaching this conclusion upon this question makes it unnecessary to consider the numerous other assignments of error.

The judgment of the district court of Pittsburg county is reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.