(No. 54922.—)

RONALD PROSSER, Appellee, v. THE VILLAGE OF
FOX LAKE *et al.*, Appellants.

*Opinion filed June 18, 1982.*

SIMON and CLARK, JJ., dissenting.

Soffietti, Johnson & Teegen, Ltd., of Fox Lake (Howard R. Teegen, of counsel), for appellants.

Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (D. Richard Joslyn, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Ronald Prosser, a trustee of the village of Fox Lake, brought an action against the village and several of the trustees and officers of the village for a permanent injunction against the operation of two ordinances that he claimed were passed in violation of section

3—11—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—17). Section 3—11—17 requires "the concurrence of a majority of all members then holding office" on a village's board of trustees for the passage of an ordinance. The issue for our review is whether the failure of an elected trustee, who serves also as the acting village president, to vote on a proposed ordinance during a meeting of the trustees at which he was present constitutes concurrence in the action taken by the majority of those voting.

Ordinance No. 79—5 established the office of village president as a full-time position. Ordinance No. 79—6 set the annual salary of the village president at $22,000 and fixed the compensation of village trustees at $75 for each regular meeting attended and $50 for each special meeting attended. At a meeting of the village's board of trustees on April 16, 1979, roll-call votes were taken on the proposed ordinances. Five of the village's six trustees, including the acting president, were present. The recorded minutes of the meeting show that trustees Kiesgen, Berdnick, and Krueger voted "aye" on each proposal; trustee Misiek voted "nay" on each; trustee Prosser was absent; and trustee Hamm, who was the acting village president, did not vote. The record shows that Hamm did not vote on the advice of the village attorney that his vote was not necessary for passage. Both ordinances were designated "approved," signed by Hamm as acting president, attested to by the village clerk, and published within the 30-day period prescribed by section 1—2—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—2—4).

The plaintiff sought to enjoin enforcement of the ordinances on the ground that the three "aye" votes did not constitute "the concurrence of a majority" of the six board members. (Trustee Hamm was legally qualified to serve as acting village president, but under section

3—11—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—14) he was prohibited from voting in both of his capacities, *i.e.*, as trustee and as acting president.) The plaintiff and the defendants filed motions for summary judgment. The circuit court of Lake County, interpreting the acting president's signing of the ordinances as a "concurrence" within the meaning of section 3—11—17, entered summary judgment in favor of the defendants. The appellate court, with one justice dissenting, reversed and entered summary judgment in favor of the plaintiff (94 Ill. App. 3d 78). We granted the defendants' petition for leave to appeal. 73 Ill. 2d R. 315.

We would note that many of the provisions of the Illinois Municipal Code make reference to "city council" and "mayor." Those provisions are applicable also to village government, since section 3—12—5 (Ill. Rev. Stat. 1979, ch. 24, par. 3—12—5) provides that a village's board of trustees, consisting of the president and the trustees, "shall pass ordinances, resolutions, and motions in the same manner as a city council." See also Ill. Rev. Stat. 1979, ch. 24, pars. 3—12—2, 3—12—3.

Though the legislative body of a municipality may determine its own rules of procedure in the adoption of ordinances (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—11), the record does not show that the village of Fox Lake had done so. The proceeding here was governed by the pertinent statutory provisions.

Section 3—11—17 states that "[t]he yeas and nays shall be taken upon the question of the passage of the designated ordinances, resolutions, or motions and recorded in the journal of the city council." (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—17.) The statute provides for the taking of only two types of votes—"yeas" and "nays." Thus, an attempt to vote other than "yea" ("aye") or "nay," for example "abstain" or "present," is not deemed to be a vote. See *Launtz v. People ex rel. Sullivan* (1885),

113 Ill. 137.

If a quorum is present, municipal legislators cannot avoid their voting responsibilities by refusing to vote when present at a meeting. (See *Launtz v. People ex rel. Sullivan* (1885), 113 Ill. 137; see also *People ex rel. Anderson v. Chicago & North Western Ry. Co.* (1947), 396 Ill. 466.) A legal significance or effect must be given to each failure to vote by a municipal legislator who is present at a board meeting in order to prevent frustration or abuse of the legislative process. (*State ex rel. Young v. Yates* (1897), 19 Mont. 239, 47 P. 1004.) He should not be allowed to have his physical presence counted toward the constitution of a quorum and at the same time be allowed to deny, in effect, his official presence by a failure to vote. Thus, a municipal legislator's failure to vote either "yea" or "nay" on a proposed ordinance must be interpreted to have the same effect as either a "yea" or a "nay" vote.

*Launtz v. People ex rel. Sullivan* (1885), 113 Ill. 137, involved a city council's vote on a motion to approve the city treasurer's bond. Four aldermen voted in favor of the motion and the remaining four refused to vote. The mayor also voted in favor of the motion and declared that the motion had carried. This court did not invoke the common law rule that a failure to vote constitutes acquiescence with the majority of those voting. Instead it said that the motion has passed regardless of whether the four refusals to vote were considered as "yeas" or "nays." If considered to be "yeas," the motion carried eight votes to none. If the refusals to vote were considered to be "nays," the aldermen were deadlocked at four votes in favor and four votes against. In that event, the mayor was entitled to cast his "yea" vote and the motion carried. It is to be observed that while the court did not decide whether the refusals to vote were to be deemed "yeas" or "nays," it is clear that it judged that the refusal to

vote was not to be considered of no significance. The court's reasoning shows that it deemed that the refusal to vote was to have a legal effect on the balloting.

The effect of voting to "abstain,," or to "pass," or voting "present" or of refusing to vote when present at a meeting depends on whether "the affirmative vote" of a majority or "the concurrence" of a majority, of either the quorum or of all members then holding office, is required for passage. If "the affirmative vote" of a majority of either standard is required (*e.g.*, Ill. Rev. Stat. 1979, ch. 24, par. 11—74—6), then nothing less than a majority of "yea" or "aye" votes will result in passage. An attempt to vote to "abstain" or in any manner other than "yea" or "nay," or a failure to vote shall be considered to have the effect of a "nay" vote. Where the "concurrence" of a majority is required for passage, the holding in most of the jurisdictions where the issue has been considered is that a vote of "pass," "present," or "abstain" or a failure to vote when present constitutes an acquiescence or concurrence with the members of the majority who did vote on the question involved. This is described in The Law of Local Government Operations: "It is a general rule that those members present at a meeting consisting of a quorum must vote against a proposal in order to defeat it. If members are present and refuse to vote, they are deemed to have consented to the majority decision." (Rhyne, The Law of Local Government Operations sec. 5.6, at 77 (1980). (See also Annot., 63 A.L.R.3d 1072, 1083 (1975); Froehlich, *Effect of Council Members Voting "Abstain," "Pass," or "Present,"* 59 Ill. Municipal Rev. 15 (June 1980).) This holding of a majority of jurisdictions developed from the common law rule pertaining to elections announced in *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685: "Whenever electors are present, and do not vote at all (as they have done here,) 'they virtually acquiesce in the election made by those who do.' "

Hamm's failure to vote as a trustee operated as a concurrence with the approving votes of the three trustees, *i.e.,* Kiesgen, Berdnick, and Krueger, who constituted a majority of the trustees who actually voted. Trustee Misiek voted against the ordinances. Thus, ordinances 79—5 and 79—6 were passed by a margin of four to one. See Annot., 63 A.L.R.3d 1072, 1083 (1975); Froehlich, *Effect of Council Members Voting "Abstain," "Pass," or "Present,"* 59 Ill. Municipal Rev. 15 (June 1980).

The plaintiff contends that even if Hamm's failure to vote is considered as a concurrence with the majority, the ordinances are invalid, since no vote was recorded for Hamm as section 3—11—17 of the Illinois Municipal Code requires. There is no merit in this. Under the circumstances, the village clerk could not reasonably be expected to describe the conduct of Hamm other than as a failure to vote. It was only after prolonged litigation that it has been determined that Hamm's inaction or failure to vote should be given the effect of a "yea" vote.

For the reasons given, the judgment of the appellate court is reversed. The judgment of the circuit court of Lake County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

Section 3—11—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—17) requires "the concurrence of a majority of all members then holding office" before an ordinance may be passed by a village board of trustees. The two ordinances in issue received only three "aye" votes—not a majority of the six-member board. One member voted against the measures; one, Richard Hamm, did not vote because the measures concerned his salary; and one member was absent. Unlike the majority, I am forced to conclude that the ordinances did not pass.

The majority contends that trustee Hamm's failure to vote can be counted with the "aye" votes so that the ordinances did have the concurrence of four members necessary for passage. In arriving at this peculiar rule, it relies on what it calls the common law rule of *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685 (also known as *Oldknow v. Wainwright*), in which Lord Mansfield stated in a one-line opinion that "[w]henever electors are present, and do not vote at all (as they have done here,) 'they virtually acquiesce in the election made by those who do.' " The majority states that this is the appropriate rule to apply when a statute requires "the concurrence" of a majority of all members as opposed to the "affirmative vote" of such a majority, and that under that rule, Hamm's abstention would be counted with the "aye" votes.

The majority's reliance on *Rex v. Foxcroft* is misplaced. That case had little to do with the issues presented here. First, I believe the majority's interpretation of what Lord Mansfield said is incorrect. Second, even if the majority is correct in its interpretation of his statement, to take such a hoary case out of its common law context and apply it to this case in which a special rule for the passage of ordinances is given in the Illinois Municipal Code is error. Admittedly, there are a few cases that seem to support the majority's interpretation of the rule in *Rex v. Foxcroft* and its application to cases like the one presented here. (See, *e.g., State ex rel. Young v. Yates* (1897), 19 Mont. 239, 47 P. 1004 (*dictum*); *Northwestern Bell Telephone Co. v. Board of Commissioners* (N.D. 1973), 211 N.W.2d 399 (relying on *Babyak* and *Yates*, not *Rex v. Foxcroft*); *Babyak v. Alten* (1958), 106 Ohio App. 191, 154 N.E.2d 14 (*dictum* and probably overruled *sub silentio* in *Davis v. City of Willoughby* (1962), 173 Ohio St. 338, 182 N.E.2d 552).) The weight of authority appears, however, to be against the application of any such

rule to cases involving statutes which require the agreement of the majority of the total membership (see, *e.g.,* *Mann v. Key* (Ala. 1977), 345 So.2d 293; *State ex rel. Deal v. Alexander* (1899), 107 Iowa 177, 77 N.W. 841; *Ram Development Co. v. Shaw* (Minn. 1976), 244 N.W.2d 110; *Caffey v. Veale* (1944), 193 Okla. 444, 145 P.2d 961; *State ex rel. Rea v. Etheridge* (Tex. Com. App. 1930), 32 S.W.2d 828), even when the statute requires a "concurrence." See, *e.g., Reese v. State ex rel. Carswell* (1913), 184 Ala. 36, 62 So. 847; *Van Hovenberg v. Holeman* (1940), 201 Ark. 370, 144 S.W.2d 718; *Steers Sand & Gravel Corp. v. Village Board* (N.Y. Sup. Ct. 1954), 129 N.Y.S.2d 403; *Davis v. City of Willoughby* (1962), 173 Ohio St. 338, 182 N.E.2d 552; *State ex rel. Roberts v. Gruber* (1962), 231 Or. 494, 500, 373 P.2d 657, 660 (condemning *Babyak* and *State ex rel. Young v. Yates* as an unwarranted extension of *Rex v. Foxcroft*).

*Rex v. Foxcroft* involved the appointment of the town clerk of Nottingham by the mayor, aldermen, and common council. Of the 25 electors 21 were present at the meeting. Of those present, nine voted for Thomas Seagrave, and 12 refused to vote entirely on the ground that the position was already occupied. In my view, the case stands for several propositions. First, the common law requirement for action by such a body is the agreement of a majority of those present *and voting*, and not a majority of those present. Next, the failure of abstainers to speak will not be construed as a "no" vote, even if their views on the election were clear. Finally, nonvoting members of the body may be counted in establishing the presence of a quorum without otherwise affecting the vote. In his characteristic style, Lord Mansfield rationalized his rule by saying that such members "virtually acquiesce" in the election made by those who do vote. *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685.

My colleagues apparently interpret Lord Mansfield's

statement to mean that while a majority of those present is necessary for a parliamentary body to take action, those who are present but do not vote are deemed to acquiesce, so that the requisite majority is achieved. This is a distortion, though not an original one, of what Lord Mansfield said. He did not say abstainers support the position of the majority so as to add to the majority; he said they accept the action taken by the entire body. They had a vote and they did not use it. The election was complete without their participation because only a majority of those present and voting is required.

In most situations the majority's misinterpretation of the *Foxcroft* rule would cause no mischief. If the common law requirement of a majority of those present and voting is what should be applied and instead a court applies a rule that a majority of those present is necessary but abstainers will be counted with the majority, the result reached would still be the same. But even assuming the majority's loose definition of the *Foxcroft* rule is correct, it has no place in a case in which a strict statutory requirement for the passage of legislation, namely a concurrence by a majority of those currently holding office, must be followed instead of the usual common law rule. The rule the majority applies is not so obvious or commonly known that one would expect the legislature to have been aware of it. In fact, as noted above, most cases do not apply such a rule to statutes like the one we have before us. As such, it is unlikely the legislature intended it to cover the situation. To apply it here, where the requirements for passage were purposely made stricter than the common law, would emasculate the special rule for ordinances that the legislature saw fit to impose. The statute would be avoided by the use of a legal fiction.

The majority does not recognize the distinction between cases involving the common law requirement for the passage of legislation and those involving a statutory requirement like that of the Illinois Municipal Code. Indeed, in mar-

shaling support for its judgment, it cites an A.L.R. annotation on the subject (Annot., 63 A.L.R.3d 1072 (1975)), but rather than citing to the section of the annotation dealing with cases in which the requirement for passage was a majority of the total membership, it cites to the page of the section that discusses cases in which the common law requirement applied. The former section of the annotation cites many more cases against the majority's position than for it. The majority also cites Rhyne, Law of Local Government Operations sec. 5.6, at 77 (1980), as authority to apply the rule it advocates to the present case. Yet, taken in its proper context, Rhyne's statement is no such authority. None of the cases cited by Rhyne deal with a statutory imposition that a majority of the legislative body's membership agree. All concern a lesser requirement for passage. One such case, *Mann v. Housing Authority* (1952), 20 N.J. Super. 276, 279, 89 A.2d 725, 727, holds that the rule my colleagues advocate applies only where "no specified number of votes is required, but the majority of a board regularly convened is entitled to act." Since the statute the court in *Mann* was construing required at least three votes for passage of any legislation, the rule the majority here advances was not applied. The majority also supports its judgment with *Launtz v. People ex rel. Sullivan* (1885), 113 Ill. 137. That case too concerns only a common law requirement for the passage of the legislation and not a strict statutory requirement that a majority of the legislative body's membership agree.

The majority apparently recognizes, however, that applying its peculiar interpretation of the rule of *Rex v. Foxcroft* to all cases in which a statute requires the agreement of a majority of the body's membership to pass legislation could do serious harm to the legislative intent. Such a rule greatly lessens the effect of such rules. The majority therefore makes a distinction between statutes that require the "concurrence" of such a majority and those that require the

"affirmative vote." The latter, it states, is the stricter requirement and does not allow for the fiction contained in Lord Mansfield's *dictum*; the former, it contends, is a looser standard for which an abstention may be treated as a vote with the majority. This distinction is made despite the fact that *Rex v. Foxcroft* itself suggests no such distinction.

I do not agree that the word "concurrence" in the context of the Illinois Municipal Code is subject to such an interpretation. In *Blakemore v. Brown* (1920), 142 Ark. 293, 297, 219 S.W. 311, 312, the Supreme Court of Arkansas stated that "[t]he use of the word 'concurring' necessarily implied consent, evidenced in some overt way, and not a mere silent acquiescence or submission." (Accord, *Dillon v. Scofield* (1881), 11 Neb. 419, 9 N.W. 554; *State v. Vermont Emergency Board* (1978), 136 Vt. 506, 394 A.2d 1360.) In *Eubanks v. State* (1911), 5 Okla. Crim. 325, 333, 114 P. 748, 752, the Criminal Court of Appeals of Oklahoma held that the words "concurrence" and "concurring" within the context of the State constitution and grand jury statute "mean 'assent,' or 'consent,' indicated by affirmative action on the part of the grand juror, by vote or ballot, showing direct approval." Perhaps most important, however, is *Davis v. City of Willoughby* (1962), 173 Ohio St. 338, 182 N.E.2d 552, a case not unlike the one at bar, involving the treatment of an abstention in a city council vote. Citing *Dillon* and *Blackmore*, the court found the word "concur," in the context of the Ohio statute requiring three-quarters of the members of the council to concur before certain public improvements could be made, to mean an actual vote for the proposition and not mere silent submission. (173 Ohio St. 338, 344, 182 N.E.2d 552, 556.) These cases solidly reject the majority's contention, and I think they are supported by logic and good sense.

Rules of parliamentary procedure tend to be rigid and formalistic. There is an excellent reason for this: Little room exists for judgment calls when it comes to determining

whether or not a particular item of legislation has been passed or not; the law must be clear. I find it incredible to believe that our legislature would deliberately throw a wrench into the workings of our local legislative bodies by drafting a rule for the passage of ordinances that would inevitably lead to conflicts over whether a concurrence of the requisite majority had been achieved. If an abstention can be construed as a concurrence, think what other actions could also be so construed—like not showing up for the meeting at all. Perhaps no formal vote need even be taken. As soon as a majority of the members clearly appear to be like-minded, should the bill pass? Such rules would obviously lead to legislative chaos.

Interestingly, the Illinois Constitution of 1970 uses the word "concurrence" often in describing requirements for various bodies in reaching decision. For example, the "concurrence" of four justices of the supreme court is necessary for a decision. (Ill. Const. 1970, art. VI, sec. 3.) During my tenure here, however, no one has ever suggested that an abstention should be counted with the majority, although there have been cases in which such a rule would have been decisive in preliminary vote taking. Four "yes" votes have always been thought to be required. Similar provisions appear in other parts of the Constitution. Ill. Const. 1970, art. IV, sec. 8(c) (the legislature), arts. VI, sec. 15(f) (the Courts Commission).

I think that the application of the rule the majority has derived from *Rex v. Foxcroft* to the situation at bar cannot be justified by interpreting the words "concurrence of a majority" to mean something less than the affirmative votes of a majority. The two cannot be treated differently. The issue must therefore be whether their rule can be applied to any case in which a statute requires a majority of the legislature's total membership either to agree, concur or affirmatively vote in order to pass legislation. As stated above, the weight of authority is clearly against its application. (See,

*e.g., Van Hovenberg v. Holeman* (1940), 201 Ark. 370, 144 S.W.2d 718; *Van Cleve v. Wallace* (1944), 216 Minn. 500, 13 N.W.2d 467; *Ezell v. City of Pascagoula* (Miss. 1970), 240 So.2d 700; *Rockland Woods, Inc. v. Incorporated Village of Suffern* (1973), 40 App. Div. 2d 385, 340 N.Y.S.2d 513; *Steers Sand & Gravel Corp. v. Village Board* (N.Y. Sup. Ct. 1954), 129 N.Y.S.2d 403; *Davis v. City of Willoughby* (1962), 173 Ohio St. 338, 182 N.E.2d 552; *Caffey v. Veale* (1944), 193 Okla. 444, 145 P.2d 961; *State ex rel. Roberts v. Gruber* (1962), 231 Or. 494, 373 P.2d 657.) To follow these cases and reject the use of a legal fiction to achieve the necessary consensus would, I believe, be in harmony with the purpose of the statute—to ensure that before ordinances are passed by a village board of trustees there is clear and express approval of the measure. (See *Rockland Woods, Inc. v. Incorporated Village of Suffern* (1973), 40 App. Div. 2d 385, 340 N.Y.S.2d 513.) The statute is designed to prevent passage of ordinances on a whim or when a majority of the whole number is unwilling to stand up and be counted as supporters of the measure.

The only argument the majority can muster against such precedent is one of practicality. If abstentions are not counted as concurrences, they may prevent any action by the legislative body. (See *Northwestern Bell Telephone Co. v. Board of Commissioners* (N.D. 1973), 211 N.W.2d 399, 404.) The power of an abstainer to prevent action, however, would not be any greater in this case than that of a member who votes "no." Furthermore, to such an argument, the Supreme Court of Oregon has said:

> "We are fully aware of the reasons of policy emphasized in some of the decisions which underlie the rule of *Rex v. Foxcroft*, that is to say, that it is the duty of members of a city council to vote and that they ought not 'by inaction, prevent action by the board.' [Citation.] It is quite as important, however, that a court does not close its eyes to the plain meaning of a statute or a charter provision in order to achieve a desired end." (*State ex rel. Roberts v. Gruber* (1962), 231 Or.

494, 500-01, 373 P.2d 657, 660.)

That is exactly what the majority has done here.
I would affirm the appellate court's judgment.

JUSTICE CLARK joins in this dissent.