LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellant, v. NORTHERN TRUST BANK/LAKE FOREST, N.A., as Trustee, *et al.*, Defendants-Appellees.

Second District   No. 2—90—0460

Opinion filed December 27, 1990.

Donald T. Morrison, Joseph T. Morrison, and Kurt D. Lloyd, all of Donald T. Morrison & Associates, P.C., of Waukegan, for appellant.

Murray R. Conzelman and Eugene M. Snarski, both of Conzelman, Snarski & Stepanich, of Waukegan, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the Lake County Forest Preserve District (District), appeals from an order of the circuit court of Lake County dismissing its

condemnation suits on the ground that they were not supported by a valid resolution.

The District filed seven separate complaints in condemnation to acquire certain properties. The condemnation actions were based on a resolution considered by the District's board of commissioners (Board) on August 12, 1988. In a consolidated hearing, defendants, owners of the various properties, moved to dismiss the complaints pursuant to section 2—619(a)(2) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(2)), on the ground that the resolution had not received the concurrence of a majority of the Board's total membership, as required by statute. The trial court granted the motions to dismiss. The cases have been consolidated on appeal.

The only issue in this case is whether, by failing to vote, a member of the Board concurred with 12 of 24 members of the Board voting for the resolution, thereby resulting in a valid resolution.

The District is a public agency organized under "An Act to provide for the creation and management of forest preserve districts ***." (Ill. Rev. Stat. 1987, ch. 96½, par. 6300 *et seq.*) The statute authorizes the District to acquire lands by condemnation. (Ill. Rev. Stat. 1987, ch. 96½, par. 6309.) Any condemnation action must be supported by a resolution passed in accordance with section 12 of the statute, which provides the following:

> "The president of the board of any district organized hereunder, shall preside at all meetings of the board and be the executive officer of the district. He shall sign all ordinances, resolutions and other papers necessary to be signed and shall execute all contracts entered into by the district and perform other duties as may be prescribed by ordinance. He may veto any ordinance and any orders, resolutions and actions, or any items therein contained, of the board which provide for the purchase of real estate, or for the construction of improvements within the preserves of the district. Such veto shall be filed with the secretary of the board within 5 days after the passage of the ordinance, order, resolution or action and when so vetoed the ordinance, order, resolution or action or any item therein contained is not effective unless it is again passed by two-thirds vote of all the members of the board. The president may vote in the same manner as the other members of the board. In the temporary absence or inability of the president, the members of the board may elect from their own number a president, pro tem.
>
> The 'Yeas' and 'Nays' shall be taken, entered on the journal

of the board's proceedings, upon the passage of all ordinances and all proposals to create any liability, or for the expenditure or appropriation of money. *The concurrence of a majority of all the members elected or appointed to the board is necessary to the passage of any such ordinance or proposal.* In all other cases the 'Yeas' and 'Nays' shall be taken at the request of any member of the board and shall be entered on the journal of the board's proceedings." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 96½, par. 6322.

The pleadings and documents attached to the motion to dismiss reveal the following uncontested facts. On August 12, 1988, the Board held a special meeting to consider adoption of a resolution that would provide for the acquisition of certain lands known as the "Waukegan Savanna." Seventeen of the Board's twenty-four members were present. After speeches for and against the resolution, the Board voted on an amendment to exclude two parcels of land from the acquisition. The amendment carried by a vote of 12 "ayes," 3 "nayes," 1 "pass," and Board President Donald Strenger did not vote. The Board then voted on the acquisition resolution, as amended. Twelve members voted "aye," four voted "nay," and again, President Strenger did not vote. The official minutes of the meeting state that "[t]he Chair ruled this motion to have failed as the President maintained that it would take 13 votes to pass." The recorded roll call vote shows that Strenger did not vote on any of the matters put to a vote at the meeting. He did not sign the resolution, nor did he ever veto it.

The District subsequently adopted 72 separate ordinances to acquire parcels of land within the Waukegan Savanna. The District has acquired, by agreement with the owners, approximately 220 acres of land pursuant to the resolution. Because the District was unable to agree on compensation with the owners of certain parcels of land, it filed, on August 17, 1989, the condemnation suits that are now on appeal before us. Defendants moved to dismiss the suits pursuant to section 2—619 of the Code asserting that the resolution of August 12, 1988, was invalid because it had not received the concurrence of a majority of all the members of the Board.

On January 30, 1990, all seven cases were consolidated for a hearing and a ruling on the identical motions to dismiss. In an April 2, 1990, order, the trial court held that the resolution had not received the majority concurrence required by statute. It therefore dismissed the complaints.

The District contends that the supreme court's decision in *Prosser*

*v. Village of Fox Lake* (1982), 91 Ill. 2d 389, 438 N.E.2d 134, requires the reversal of the trial court. In *Prosser*, a trustee of the village brought suit against the village alleging that two ordinances which set the rates for compensating the village president and trustees violated the Illinois Municipal Code (Municipal Code) (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—17). Under section 3—11—17 of the Municipal Code, the *concurrence of a majority* of all members on the village's board of trustees was required for the passage of an ordinance. The ordinances in question in *Prosser* had been considered at a meeting in which five of the six village trustees were present. Each proposal received three "aye" votes and one "nay" vote. The other trustee did not vote, relying on advice of counsel that his vote was not necessary for passage. Both ordinances were designated "approved," signed by the acting president, attested to by the village clerk and published as prescribed by statute. The supreme court held that the ordinances were valid because they received the *concurrence of a majority* of all the members of the board of trustees: the three trustees who voted "aye" and the nonvoting trustee. (*Prosser*, 91 Ill. 2d at 396, 438 N.E.2d at 136.) The court's reasoning is the following:

> "The effect of voting to 'abstain,' or to 'pass,' or voting 'present' or of refusing to vote when present at a meeting depends on whether 'the affirmative vote' of a majority or 'the concurrence' of a majority, of either the quorum or of all members then holding office, is required for passage. If 'the affirmative vote' of a majority of either standard is required (*e.g.*, Ill. Rev. Stat. 1979, ch. 24, par. 11—74—6), then nothing less than a majority of 'yea' or 'aye' votes will result in passage. An attempt to vote to 'abstain' or in any manner other than 'yea' or 'nay,' or a failure to vote shall be considered to have the effect of a 'nay' vote. Where the 'concurrence' of a majority is required for passage, the holding in most of the jurisdictions where the issue has been considered is that a vote of 'pass,' 'present,' or 'abstain' or a failure to vote when present constitutes an acquiescence or concurrence with the members of the majority who did vote on the question involved. This is described in The Law of Local Government Operations: 'It is a general rule that those members present at a meeting consisting of a quorum must vote against a proposal in order to defeat it. If members are present and refuse to vote, they are deemed to have consented to the majority decision.' (Rhyne, The Law of Local Government Operations sec. 5.6, at 77 (1980). (See also Annot., 63 A.L.R.3d 1072, 1083 (1975); Froehlich, *Effect of*

*Council Members Voting 'Abstain,' 'Pass,' or 'Present,'* 59 Ill. Municipal Rev. 15 (June 1980).) This holding of a majority of jurisdictions developed from the common law rule pertaining to elections announced in *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685: 'Whenever electors are present, and do not vote at all (as they have done here,) "they virtually acquiesce in the election made by those who do." ' " 91 Ill. 2d at 395, 438 N.E.2d at 136.

■ Thus, the rule set forth in *Prosser* is that when a statute requires the concurrence of a majority and a member passes, abstains or does not vote, then that member will be deemed to have concurred with the majority of those who voted.

■ Applying the rule in *Prosser* to this case, the resolution as amended received the concurrence of the majority of all the members of the board, as required by statute, and was therefore valid. The vote was 12 "ayes," 4 "nays," and Strenger did not vote. By not voting, Strenger concurred with the majority, the 12 "aye" votes, and therefore, the resolution received the concurrence of a majority of all the members of the Board, 13. Under the *Prosser* rule, if Strenger did not want the resolution to pass, he would have had to vote "nay." By not voting, he concurred.

The trial court held that *Prosser* is distinguishable on its facts because there the nonvoting trustee's conduct indicated that he would have voted in favor of the ordinances, whereas, in this case, President Strenger's comment that the vote was inadequate to pass the resolution, combined with his decision not to cast an "aye" vote, indicates that he did not support the resolution. Defendants similarly attempt to distinguish *Prosser* and argue that *Prosser* did not announce a rule of law but held only that the circumstances in that case indicated that the nonvoting trustee supported the ordinances.

■ This distinction is unpersuasive. In *Prosser*, the Illinois Supreme Court adopted a rule for determining the significance of the failure of a member to vote when a concurrence of a majority is needed for passage, a situation which has often created problems in determining the existence of a majority necessary for municipal action (56 Am. Jur. 2d *Municipal Corporations* §170 (1971)). Several jurisdictions have required actual affirmative votes of more than one-half the total number of members, regardless of any abstentions from voting. (See Annot., 63 A.L.R.3d 1072, 1090 (1975).) However, other jurisdictions, emphasizing the duty of members to cast a vote, have taken the position that when a majority of those members present and actually voting, but less than a majority of the total number of

members, are in favor of a resolution and when there are other members, are in favor of a resolution and when there are other members present but not voting, those who abstain will be considered as having voted with the majority, creating a majority of the entire membership. (Annot., 63 A.L.R.3d at 1091.) In *Prosser*, the Illinois Supreme Court chose to follow the latter authority. Furthermore, *Prosser* contains no limiting language which constrains the decision to the facts of that case.

The record clearly shows that Strenger failed to vote rather than vote "nay." Under the rule announced in *Prosser*, Strenger is deemed to have concurred with the majority of those voting. Thus, the resolution was valid, and the motions to dismiss should have been denied.

■ Defendants make two other cursory arguments. They claim that this court should give deference to the interpretation given to the statute by the Board itself when it voted to uphold the Board president's decision that the resolution failed on this occasion and made the same ruling on another date. They also argue that a letter containing an informal opinion of the Illinois Attorney General's office supports the view that 13 "aye" votes are required to pass this resolution. These contentions are meritless. Even were we to interpret the Board's action following the vote as an administrative interpretation of the statute, we pay it no deference because of the supreme court's definitive decision in *Prosser*. Nor do we conclude that the informal opinion of the Attorney General's office is contrary to our result or the decision in *Prosser*. The opinion merely states, however, that such a resolution as here must have a majority of all members of the Board concur in the action rather than a majority of a quorum of the Board, a question not at issue in the instant case.

While the rule in *Prosser* may at first glance seem to be confusing and result in illogical outcomes, local governing bodies are urged to examine their respective enabling statutes and determine if the affirmative vote of a majority or the concurrence of a majority is required. If the concurrence of a majority is required, then members should be aware that under *Prosser* their abstaining from or failing to vote will be deemed as a concurrence with the majority of those voting.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded.

*Reversed and remanded.*

UNVERZAGT, P.J., and DUNN, J., concur.