**C.E. Rupert SMITH III and Nancy E. Smith, Plaintiffs,**

v.

**SUSSEX COUNTY COUNCIL and Ralph E. Benson, George S. Cole, George J. Collins, Dale R. Dukes and William D. Stevenson, Sr., As Members of Said Council, Defendants.**

**Civ. A. No. 1518.**

Court of Chancery of Delaware, Sussex County.

Submitted: March 26, 1993.
Decided: July 13, 1993.

James A. Fuqua, Jr., of Fuqua, Yori & Rogers, Georgetown, for plaintiffs.

Dennis L. Schrader, of Wilson, Halbrook & Bayard, P.A., Georgetown, for defendants.

**OPINION**

ALLEN, Chancellor.

Defendants' motion for summary judgment poses the question whether an ordinance of the Sussex County Council was duly adopted. The motion to adopt the ordinance received the affirmative votes of only two of the five members of Council, but received only one negative vote. The remaining two members

---

of Council expressly abstained from the vote, although it is alleged that they participated in the discussion of the matter.

Council itself determined that the ordinance had not been adopted. In its published notice of the results of the meeting, it stated that "the ordinance failed for a lack of three affirmative votes."

If enacted, the ordinance would create a new zoning designation for a seven acre tract of land owned by plaintiffs. This suit was brought, in part, to obtain a judicial determination that the ordinance in question was validly adopted (Count I). The position that this is the case is premised upon the assertion that the two abstentions constitute "concurrence" with the outcome as determined by a majority of those members who did case votes.

Defendants, Sussex County Council and all five of its members, contend otherwise. They have moved for summary judgment on Count I. In doing so, they rely upon what they see as the plain meaning of the statute that governs procedures in the County Council, including voting. Only one sentence of that statute is in issue in this case. It states:

> No action of the county government, except as otherwise provided in this title, shall be valid or binding *unless adopted with the concurrence of a majority of all members* of the county government.

9 Del.C. § 7002(k)(3) (1989) (emphasis added).

Plaintiffs urge that Section 7002(k)(3) "should be interpreted under the general Common Law Rule that those who refuse to vote are regarded as having voted with the majority." According to plaintiffs an abstention *is* a concurrence in the outcome determined by the vote of those electors who cast votes. Taking this view of the meaning of the statutory term "concurrence," plaintiffs conclude that the ordinance granting their property a new zoning classification was "adopted with the concurrence" of four of the five members of County Council.

The interpretation of this statute for which plaintiffs contend is built upon a common law rule dating to a statement of the great Lord Mansfield in a 1760 case. In that case it was argued that one Seagrave had not been duly elected as town clerk of the town of Nottingham. Of twenty five electors of the town eligible to vote for the office, twenty one were present at the time of the vote, but twelve abstained from voting. The abstainers took the position that there was no vacancy in the office. All (9) of the remaining electors voted for Seagrave. Plaintiff claimed to be the officeholder and sought a judgment that Seagrave had not been elected by a majority of the quorum of the meeting.

The Court of Kings Bench held that in not voting, the abstainers, in effect, indicated their acquiescence in the result determined by the majority of voting electors. *See Rex v. Foxcroft*, 2 Burr. 1017, 97 Eng.Rep. 683 (K.B.1760). From this ruling a practice of common law courts evolved in conformity with its holding. *See* Annot., 63 A.L.R.3d 1072 (1975).

Of course the rule of *Rex v. Foxcroft*, is quite circular: if it is the legal rule that abstainers in effect vote with the majority, then once the rule is known, the assumption of acquiescence in that result will probably be true. If, however, the rule were directly opposite—if abstainers did not count with the majority of voters in calculating the results of the vote—then of course, the assumption of acquiescence adopted in *Rex v. Foxcroft* would be unjustified. Thus, the legal rule determines the factual inference rather than the other way around. The rule of *Rex v. Foxcroft* must be seen as an administrative convenience or policy preference, not as one that is logically compelled.

\* \* \*

I begin an analysis of this motion concerning the law on the effect of abstentions in the governance of municipal corporations in Delaware with a few preliminary observations. First, the question presented is one of statutory interpretation, not as in *Rex v. Foxcroft* common law adjudication. Second, there are no Delaware cases that directly assist in formulating a statement of that law. The question presented is one of first impression in this State. Third, from a general point of view, the question presented is one of those questions of which it can be said that it is more important that it be settled than that it be settled in any particular way. That is,

what is important, as a general matter, is that representatives exercising some part of discretionary sovereignty (which the Sussex County Council does), understand *ex ante* what effect will be accorded to their action should they abstain from voting (whether or not they should or are authorized to do so). If the rule is clear, no matter which rule it is, members of council will know the effect of their acts. If it is not clear, confusion as to what action has been taken will follow.

For the reasons that follow I conclude that the term "concurrence" as used in Section 7002(k)(3) is not satisfied by an abstention. Legislative bodies such as Sussex County Council *act through the vote* of the body. Whether an action constitutes valid legislative law creation is to a large extent a question of formality. Whether a particular member "concurs" in any action within the meaning of Section 7002(k)(3)—which may determine whether a statement (ordinance) constitutes valid law—ought not to be a question of subjective intention of a member. Whether he or she concurs in action is determined by his or her vote. If a member votes for an ordinance he or she concurs in its enactment. If she does not vote for it, that member cannot, in my opinion, be said to have concurred in it in the formal way that legislative law creation requires.

This construction of the term "concurrence" offers several advantages over the alternative construction that one who abstains will be deemed to have concurred by acquiesce: First, it seems to me to be closer to a standard English interpretation of the language used than an interpretation that reads a failure to vote as an agreement to the proposal. Second, this interpretation while offering clear guidance *in future* (as it must be conceded would its opposite) can, unlike the alternative, be applied uniformly. This is not true of the construction that abstention does constitute concurrence by acquiescence, since in some cases abstention will be required by conflicts of interest. In that case, the *acquiescence rationale* that undergirds the rule for which plaintiffs contend could plainly not hold. *But see Northwestern Bell Co., infra.* Thus the approach for which plaintiffs contend will in some cases require a

judicial inquiry into the cause of the abstention. This expense is not justified by any systematic advantage this rule offers over its opposite. Third, the better view expressed in the cases, in my opinion, supports this construction as well. *See, e.g., Prosser v. Village of Fox Lake,* 91 Ill.2d 389, 63 Ill.Dec. 396, 399, 438 N.E.2d 134, 137 (1982) (Simon, J. dissenting) and *Davis v. City of Willoughby,* 173 Ohio St. 338, 182 N.E.2d 552, 556 (1962), discussion below.

\* \* \*

The judicial opinions dealing with the effect of an abstention on the effectiveness of municipal action are, in the words of one opinion "in hopeless conflict. Each decision rests upon the peculiar quorum requirements and the verbiage of the municipal charter involved." *Cromarty v. Leonard,* 26 Misc.2d 405, 211 N.Y.S.2d 933, 937 (1961). Of particular interest here are only those cases that construe statutes that employ the term "concurrence" or similar language. Three such cases offer illumination. Taken together they demonstrate that there is no single conclusively right answer to the question posed. What, for example, seems the "better logic" to the North Dakota Supreme Court in *Northwestern Bell Co. v. Board of Comm'r,* 211 N.W.2d 399 (1973), the case most earnestly relied upon by plaintiffs, is rejected in *Davis v. City of Willoughby,* 173 Ohio St. 338, 182 N.E.2d 552 (1962).

*Northwestern Bell* presented a strong case for the rule plaintiff urges. There the statute required that "a majority of all of the members of the governing body concur in the passage of an ordinance." Two of the five members were required by conflicting interest to disqualify themselves from consideration of an ordinance imposing a tax. The remaining three members split two-to-one on the question. After dissecting a number of cases on both sides of the issue, with it is fair to say no decisive effect, the court states that "the duty to vote is present if the member is present." 211 N.W.2d at 403. This observation seemed somehow to support the court in its determination that those who refused to vote should be deemed to have voted with the majority. But the conclusion that one has a duty to vote, even if accepted, does not it

seems itself suggest in what direction the law should imply the absent votes to go, as the North Dakota Court itself then went on to acknowledge:

An additional reason for this result is adverted to in a few cases. *It is that it is not possible to disregard a passed vote.* It is all very well to say, as some decisions do, that it is not permissible to count a non-vote as a vote, but the fact is that if the non-vote is not counted in favor of a proposition, it may as well be (and in effect is) counted against it. The case now before us is a perfect illustration. If we adopt Bell's position and hold that three affirmative votes are required in the present case and a passed vote does not count affirmatively, we have two votes in favor and one against, with three needed for passage. The result is identically the same as if we counted the passed votes as negative votes, which would give a result of two aye and three no votes. In either case, the result is to defeat the proposal.

This case is also a good illustration of the difficulties created by the rule advocated by Bell. If two disqualified members can abstain from voting, and the requirement of "a majority of all of the members" (Sec. 40–11–02, N.D.C.C.) is construed to mean three of the five members, regardless of abstentions, then the non-voting members are forcing the other members to agree, not by a majority vote but by a unanimous vote, in order to accomplish anything. This is an incentive to inaction. And, of course, if three members abstained, nothing could be done, although all members were present.

211 N.W.2d at 403–04 (emphasis added).

Thus the principal case relied upon rests its construction of a similar statute on the perceived need to encourage municipal action. The construction for which the defendants here argue was there seen as making municipal action more difficult and, in the mind of the North Dakota Court that was unwise.

In *Davis v. City of Willoughby* the Supreme Court of Ohio takes a different view. There the statute involved (dealing with special assessments) required authorization by the declaration of the municipality "three fourths of the members elected thereto concurring." There were seven duly elected councilmen, six of whom were present for the meeting in question. Five voted yes on the ordinance, one who was present did not vote. Thus the act did not achieve the vote or concurrence of three fourths of all members, unless the abstention of the member present could be read as a concurrence by acquiescence.

The member who had abstained, in his capacity as acting mayor, later signed the ordinance. The court rejected the assertion that this evidenced support for the measure and his "concurrence" to it. He was "simply performing a ministerial act."

In rejecting the theory that the abstention could be counted as a concurrence by acquiescence the Ohio Supreme Court focused on the legislation's imposition of stringent voting requirements for the imposition of taxes:

The theory that inaction by members of a city council should be considered as an acquiescence and approval of the action taken by the majority of the members voting is not applicable in a proceeding to levy and collect special assessments for a public improvement. Section 727.09, Revised Code, authorizes the levy and collection of a special assessment to defray the cost of constructing a sewer only when three-fourths of the elected members of council concur in such action. We construe the term, "concur," as used in the statute, to mean an affirmative vote for the proposition. To concur means more than a mere acquiescence or silent submission; it implies consent induced in some overt way. *Dillon v. Scofield,* 11 Neb. 419, 9 N.W. 554; and *Blakemore v. Brown,* 142 Ark. 293, 219 S.W. 311.

182 N.E.2d at 556.

The concluding case to which I will refer is a recent Supreme Court of Illinois case, *Prosser v. Village of Fox Lake,* 91 Ill.2d 389, 63 Ill.Dec. 396, 438 N.E.2d 134 (1982). The statute required "the concurrence of a majority of all members then holding office." Five of six trustees of a municipality were present. The proposal was to create a paid vil-

lage president position. Three trustees voted "aye"; one voted "nay." The trustee who was acting village president did not vote. (The record showed that he had been advised his vote was unnecessary for passage). He did sign the ordinance in his executive capacity.

Plaintiff asserted that three aye votes did not constitute "the concurrence of a majority of all members then holding office." The Court of Appeals entered summary judgment for plaintiff, over a dissent. The Supreme Court reversed, again with a dissent. It first held that there was a duty to vote and some effect must be given to an abstention. (63 Ill.Dec. at 398–99, 438 N.E.2d at 136–37). Once more I note however that this observation gives no guidance as to what that effect should be. On that question the *Prosser* majority offers no functional analysis but sets forth what it takes to be settled doctrine:

The effect of voting to "abstain," or to "pass," or voting "present" or of refusing to vote when present at a meeting depends on whether "the affirmative vote" of a majority or "the concurrence" of a majority, of either the quorum or of all member then holding office, is required for passage. If "the affirmative vote" of a majority of either standard is required (*e.g.,* Ill.Rev. Stat.1979, ch. 24, par. 11–74–6), then nothing less than a majority of "yea" or "aye" votes will result in passage. An attempt to vote to "abstain" or in any manner other than "yea" or "nay," or a failure to vote shall be considered to have the effect of a "nay" vote. Where the "concurrence" of a majority is required for passage, the holding in most of the jurisdictions where the issue has been considered is that a vote of "pass," "present," or "abstain" or a failure to vote when present constitutes an acquiescence or concurrence with the members of the majority who did vote on the question involved. This is described in The Law of Local Government Operations: "It is a general rule that those members present at a meeting consisting of a quorum must vote against a proposal in order to defeat it. If members are present and refuse to vote, they are deemed to have consented to the majority decision."

Thyne, The Law of Local Government Operations sec. 5.6, at 77 (1980). *See also* Annot., 63 A.L.R.3d 1072, 1083 (1975); Froehlich, *Effect of Council Members Voting "Abstain," "Pass," or "Present,"* 59 Ill.Municipal Rev. 15 (June 1980). This holding of a majority of jurisdictions developed from the common law rule pertaining to elections announced in *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng.Rep. 683, 685: "Whenever electors are present, and do not vote at all (as they have done here,) 'they virtually acquiesce in the election made by those who do.'"

63 Ill.Dec. at 398, 438 N.E.2d at 136. The majority thus concluded that the abstention "operated as a concurrence." The dissent however persuasively distinguishes the legal analysis of the majority as directed towards common law cases, not those governed by statutes. (63 Ill.Dec. at 400–402, 438 N.E.2d at 138–40). When the dissenting Justices look at the purpose of the statute they are required to conclude:

that the application of the rule the majority has derived from *Rex v. Foxcroft* to the situation at bar cannot be justified by interpreting the words "concurrence of a majority" to mean something less than the affirmative votes of a majority. The two cannot be treated differently. The issue must therefore be whether their rule can be applied to any case in which a statute requires a majority of the legislature's total membership either to agree, concur or affirmatively vote in order to pass legislation. As stated above, the weight of authority is clearly against its application.

\* \* \* \* \* \*

To follow these cases and reject the use of a legal fiction to achieve the necessary consensus would, I believe, be in harmony with the purpose of the statute—to ensure that before ordinances are passed by a village board of trustees there is clear and express approval of the measure. (*See Rockland Woods, Inc. v. Incorporated Village of Suffern*) (1973), 40 App.Div.2d 385, 340 N.Y.S.2d 513). The statute is designed to prevent passage of ordinances on a whim or when a majority of the whole

number is unwilling to stand up and be counted as supporters of the measure.

63 Ill.Dec. at 402, 438 N.E.2d at 140 (Simon, J. dissenting).

I am constrained to agree with the view expressed by the dissent in *Prosser* and by the court in *City of Willoughby* and to reject the reasoning of *Northwestern Bell* based upon that Court's desire to facilitate municipal action. *See also State ex rel Roberts v. Gruber,* 231 Or. 494, 373 P.2d 657, 660 (1962).

I must assume that in delegating to the Sussex County Council some part of the sovereign power of the State of Delaware, the General Assembly was quite alert to the conditions upon which so much of the States sovereignty as was being delegated could be exercised. It limited that exercise in Section 7002(k)(3) to situations in which a majority of all the members, elected from different districts in the county, could agree. It used the term "concurrence" but I do not think it meant anything else than a majority of members of Council "agree upon" or "vote for" a motion when it is formally presented to Council.[1] That interpretation may occasion

instances in which power cannot be exercised. That fact does not present a reason, in my opinion, for courts to give an artificial or strained meaning to statutory words. If the standards imposed lead to an inefficient or weakened legislative or executive agency, then the remedy lies with the power that created that structure in the first instance.

As stated above, the Council as a body acts through its votes; its members concur in decisions by voting. When Section 7002(k)(3) requires the concurrence of all members, it requires, in my opinion, a majority of all members to vote affirmatively.

Being of this view, I am required to grant the motion of the defendants for summary judgment of dismissal of Count I.

IT IS SO ORDERED.

---

1. As of 1992 voting of Sussex County Council in matters effecting zoning will be governed by Section 6925 of Title 9. That statute will verbally quite different from the one here construed is capable of supporting an argument based on *Rex v. Foxcroft,* as well.