2022 IL App (4th) 220169

NO. 4-22-0169

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 21, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MADISON COUNTY, ILLINOIS, on Behalf of the County and People of Madison County; CHRISTINA WILEY; DANIEL McCONCHIE; CHRISTOPHER THRELKELD; and AMY SHOLAR | ) ) ) ) | Appeal from the Circuit Court of Sangamon County No. 22CH10 |
|       Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| THE ILLINOIS STATE BOARD OF ELECTIONS; IAN K. LINNABARY, CASANDRA B. WATSON, WILLIAM J. CADIGAN, LAURA K. DONAHUE, TONYA L. GENOVESE, CATHERIN S. McCRORY, WILLIAM M. MCGUFFAGE, and ANDRICK S. TEREVEN SR., in Their Official Capacities as Board Members of the Illinois State Board of Elections; JAY ROBERT "J.B." PRITZKER, in His Official Capacity as Governor of the State of Illinois; CYNTHIA A. GRANT, in Her Official Capacity as Clerk of the Supreme Court of Illinois; DON HARMON; and EMANUEL "CHRIS" WELCH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
|       Defendants | ) ) | |
| (Jay Robert "J.B." Pritzker, Don Harmon, and Emanuel "Chris" Welch, Defendants-Appellees). | ) ) ) | Honorable Ryan M. Cadagin, Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices DeArmond and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiffs, Madison County, Illinois, Christina Wiley, Daniel McConchie,

Christopher Threlkeld, and Amy Sholar, appeal from the circuit court's judgment dismissing their complaints, arguing this court should reverse the circuit court's judgment to the extent it found their claims for declaratory relief were insufficiently stated or otherwise barred. For the reasons that follow, we affirm the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Public Act 102-693

¶ 4        On January 7, 2022, Public Act 102-693 (eff. Jan. 7, 2022) was signed into law. In relevant part, Public Act 102-693 amended the Circuit Courts Act (705 ILCS 35/0.01 *et seq.* (West 2020)) by changing section 2f-2 and adding section 2f-13. Pub. Act 102-693 (eff. Jan. 7, 2022) (amending 705 ILCS 35/2f-2 and adding 705 ILCS 35/2f-13). In addition, Public Act 102-693 created the Judicial Circuits Districting Act of 2022 (Judicial Circuits Districting Act). *Id.* (adding 705 ILCS 24/1 *et seq.*).

¶ 5        Section 2f-2 of the Circuit Courts Act, as amended by Public Act 102-693, provides, in relevant part, for the division of the Nineteenth Judicial Circuit (which is coterminous with Lake County) into 12 subcircuits drawn by the General Assembly. *Id.* (amending 705 ILCS 35/2f-2). It allots a single judge to nine of the subcircuits and two judges apiece to the remaining three subcircuits. Section 2f-2 states, "The subcircuits shall be compact, contiguous, and substantially equal in population." *Id.* (amending 705 ILCS 35/2f-2(a)).

¶ 6        Section 2f-13 of the Circuit Courts Act, as added by Public Act 102-693, provides, in relevant part, for the division of the Third Judicial Circuit (which encompasses both Madison County and Bond County) into four subcircuits drawn by the General Assembly. *Id.* (adding 705 ILCS 35/2f-13). It allots the nine existing circuit judgeships between the subcircuits as those

judgeships become vacant. Section 2f-13 states, "Once a resident judgeship is assigned to a subcircuit, it shall continue to be assigned to that subcircuit for all purposes." *Id.* (adding 705 ILCS 35/2f-13(b)).

¶ 7 Neither sections 2f-2 nor 2f-13 of the Circuit Courts Act provides for an at-large circuit judgeship within the Nineteenth or Third Judicial Circuits. Both sections 2f-2 and 2f-13 affect several judicial elections within the Nineteenth and Third Judicial Circuits to be held on June 28 and November 8, 2022. Separate provisions of Public Act 102-693 involving other circuits do not take effect until 2024.

¶ 8 Sections 40 and 45 of the Judicial Circuits Districting Act, as added by Public Act 102-693, set forth precincts belonging to particular subcircuits of the Nineteenth Judicial Circuit and Twenty-Second Judicial Circuit (which is coterminous with McHenry County). *Id.* (adding 705 ILCS 24/40, 45). Certain Lake County precincts are listed in both the first subcircuit of the Nineteenth Judicial Circuit and the first subcircuit of the Twenty-Second Judicial Circuit.

¶ 9 B. Recertification of Judicial Vacancies

¶ 10 On January 11, 2022, the Illinois Supreme Court, "[i]n accordance with Sections 2f-2 and 2f-13 of the Circuit Courts Act, as enacted by Public Act 102-0693," entered an order recertifying certain judicial vacancies in the Third and Nineteenth Judicial Circuits for election in 2022 and allotting or reallotting them to certain subcircuits. Ill. S. Ct., M.R. 31114 (eff. Jan. 11, 2022). Cynthia A. Grant, as Clerk of the Supreme Court of Illinois, affixed the seal of the supreme court to the order.

¶ 11 C. Complaint

¶ 12 On January 21, 2022, Madison County, by and through its State's Attorney and as

- 3 -

directed by the Madison County Board on behalf of the residents of Madison County, and Wiley, a resident of the newly created third subcircuit of the Third Judicial Circuit, filed a complaint for declaratory and injunctive relief against Jay Robert "J.B." Pritzker, in his official capacity as Governor of the State of Illinois, the Illinois State Board of Elections and its members, in their official capacities, and Clerk Grant, in her official capacity, and for a writ of *mandamus* against Clerk Grant. In the complaint, as later amended, it was alleged Madison County was bringing the action "to protect and vindicate the rights of Madison County residents and voters to freely and fairly elect members of the judiciary in Madison County." It was also alleged Madison County suffered from administrative difficulties caused by the implementation of section 2f-13 of the Circuit Courts Act during the current election cycle. As to the claims for declaratory relief, Madison County and Wiley sought a declaration pursuant to section 2-701 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-701 (West 2020)), that section 2f-13 was unconstitutional in that it violated (1) article VI, section 7, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 7) (the circuit courts clause of our state constitution) and (2) article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13) (the special legislation clause of our state constitution). They alleged section 2f-13 violated the circuit courts clause of our state constitution by eliminating all at-large judgeships and by limiting retention elections to subcircuits. They alleged section 2f-13 violated the special legislation clause of our state constitution by creating a scheme applicable only to the Third Judicial Circuit. As to the claim for a writ of *mandamus*, Madison County and Wiley sought an order compelling Clerk Grant to recertify two judicial vacancies in the Third Judicial Circuit as they existed prior to the enactment of section 2f-13.

¶ 13 D. Motion for a Temporary Restraining Order

- 4 -

¶ 14 Also on January 21, 2022, Madison County and Wiley filed a motion for a temporary restraining order and a supporting memorandum.

¶ 15 E. Issuance of a Temporary Restraining Order

¶ 16 On January 24, 2022, the circuit court issued a temporary restraining order in favor of Madison County and Wiley.

¶ 17 F. Interlocutory Appeal of Temporary Restraining Order

¶ 18 On January 25, 2022, Governor Pritzker and Clerk Grant petitioned this court for review of the temporary restraining order pursuant to Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017). (The Illinois State Board of Elections and its members did not join in petitioning for review, nor have they taken any position throughout these proceedings.)

¶ 19 G. First Petition to Intervene

¶ 20 On January 31, 2022, McConchie, a state senator who resided in a newly created subcircuit of the Nineteenth Judicial Circuit, which had "only one judge," filed a petition to intervene into the action as a plaintiff along with a proposed complaint. In the complaint, as later amended, McConchie, like Madison County and Wiley, sought declaratory and injunctive relief against Governor Pritzker, the Illinois State Board of Elections and its members, and Clerk Grant and a writ of *mandamus* against Clerk Grant. Relevant here, McConchie sought a declaration pursuant to section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2020)), that section 2f-2 of the Circuit Courts Act was unconstitutional in that it violated (1) the circuit courts clause of our state constitution by eliminating all at-large judgeships, (2) the special legislation clause of our state constitution by creating a scheme applicable only to the Nineteenth Judicial Circuit, and (3) article III, section 3, of the Illinois Constitution (Ill. Const. 1970, art. III, § 3) (the free and

equal clause of our state constitution) by creating judicial elections which are not equal. With respect to his claim under the free and equal clause of our state constitution, the complaint contained allegations about (1) the unequal number of judges in each subcircuit and (2) the unequal populations of the subcircuits, specifically that the third subcircuit's population was estimated to be 55,871, while the twelfth subcircuit's population was estimated to be 62,560. The complaint also alleged, "Subcircuits must be substantially equal in population," and highlighted the fact some of the Lake County precincts are set forth in the first subcircuit of the Nineteenth Judicial Circuit as well as the first subcircuit of the Twenty-Second Judicial Circuit.

¶ 21                                    H. Motion to Dismiss

¶ 22            On February 4, 2022, Clerk Grant filed a motion to dismiss herself from the action pursuant to section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2020)), contending she had no power to certify judicial vacancies which, instead, were certified by the Chief Justice of the Illinois Supreme Court with the assistance of the Administrative Office of the Illinois Courts.

¶ 23            I. Reversal of the Temporary Restraining Order

¶ 24            On February 7, 2022, this court reversed the circuit court's temporary restraining order and remanded for further proceedings, concluding Madison County and Wiley had not shown they would suffer an irreparable injury if a temporary restraining order did not issue before the merits of their claims could be adjudicated. *Madison County v. Illinois State Board of Elections*, No. 4-22-0072 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Although we expressed no opinion on the merits of the claims raised by Madison County and Wiley, we noted "the circuit court would benefit from a more thorough analysis from all parties on the issue of whether the General Assembly can eliminate all at-large circuit judgeships within

a particular judicial circuit." *Id.* at 6.

¶ 25                              J. Second Petition to Intervene

¶ 26          Also on February 7, 2022, Don Harmon, the President of the Illinois Senate, and Emanuel "Chris" Welch, the Speaker of the Illinois House of Representatives, filed a petition to intervene into the action as defendants.

¶ 27                              K. Third Petition to Intervene

¶ 28          On February 9, 2022, Threlkeld and Sholar, appointed circuit judges in Madison County who had announced their intentions to run for circuit judgeships, filed a petition to intervene into the action as plaintiffs along with a proposed complaint. In their complaint, Threlkeld and Sholar, like Madison County, Wiley, and McConchie, sought declaratory and injunctive relief against Governor Pritzker, the Illinois State Board of Elections and its members, and Clerk Grant and a writ of *mandamus* against Clerk Grant. Relevant here, Threlkeld and Sholar sought the same declaratory relief requested by Madison County and Wiley. In affidavits attached to their complaint, Threlkeld and Sholar explained how section 2f-13 of the Circuit Courts Act caused them personal inconvenience and expense related to moving to homes in the first subcircuit of the Third Judicial Circuit.

¶ 29                              L. Intervention

¶ 30          On February 10, 2022, the circuit court allowed the petitions to intervene over no objections and scheduled a trial for February 24, 2022.

¶ 31                              M. Second Motion to Dismiss

¶ 32          On February 21, 2022, Harmon and Welch filed a motion to dismiss the action pursuant to section 2-619.1 of the Civil Code (735 ILCS 5/2-619.1 (West 2020)), arguing (1) the

circuit court lacked jurisdiction to grant the requested relief, (2) plaintiffs lacked standing to bring the claims raised in their complaints, and (3) the complaints failed to state a claim upon which relief could be granted.

¶ 33                                N. Trial Briefs and Third Motion to Dismiss

¶ 34            On February 22, 2022, plaintiffs filed trial briefs. In addition, Governor Pritzker filed a motion to dismiss the action pursuant to section 2-619.1 of the Civil Code (*id.*), arguing (1) plaintiffs lacked standing to bring the claims raised in their complaints and (2) the complaints failed to state a claim upon which relief could be granted.

¶ 35                                O. Dismissal

¶ 36            On February 24, 2022, the circuit court entertained oral arguments on the motions to dismiss. During the arguments, plaintiffs moved to voluntarily dismiss Clerk Grant from the action, which the court granted. The court then, after considering the arguments presented, issued an order dismissing the action, finding (1) it "lack[ed] jurisdiction to provide the relief plaintiffs seek," (2) plaintiffs lacked standing to bring the claims raised in their complaints, and (3) the complaints failed to state a claim upon which relief could be granted.

¶ 37            This appeal followed.

¶ 38                                II. ANALYSIS

¶ 39            On appeal, plaintiffs argue this court should reverse the circuit court's judgment to the extent it found their claims for declaratory relief were insufficiently stated or otherwise barred. Specifically, plaintiffs contend, contrary to the findings of the circuit court, (1) the circuit court had jurisdiction to grant declaratory relief, (2) they had standing to pursue their claims for declaratory relief, (3) their complaints sufficiently stated claims that sections 2f-2 and 2f-13 of the

Circuit Courts Act violate the circuit courts clause of our state constitution by eliminating all at-large judgeships, and (4) their complaints sufficiently stated claims that sections 2f-2 and 2f-13 violate the special legislation clause of our state constitution by creating a scheme applicable only to the Third and Nineteenth Judicial Circuits. In addition, Madison County, Wiley, Scholar, and Threlkeld contend their complaints sufficiently stated claims that section 2f-13 violates the circuit courts clause of our state constitution by limiting retention election to the judicial subcircuits. Furthermore, McConchie contends his complaint sufficiently stated claims that section 2f-2 (1) violates its expressed requirement that judicial subcircuits be "substantially equal in population" by having subcircuit populations deviate from the ideal population by as much as 11.24%, (2) violates the free and equal clause of our state constitution by creating unequal voting strength amongst similarly situated voters, and (3) is "invalid" because compliance is impossible as a result of conflicting provisions in sections 40 and 45 of the Judicial Circuits Districting Act.

¶ 40    In response, Governor Pritzker, Harmon, and Welch argue this court should affirm the circuit court's judgment. In support of their arguments, they contend plaintiffs' claims for declaratory relief are (1) barred for lack of standing, (2) not ripe for review, (3) lacking any legal basis, and/or (4) meritless. In addition, Harmon and Welch contend affirmance is warranted because the circuit court lacked "jurisdiction" to grant the requested declaratory relief.

¶ 41                              A. Standard of Review

¶ 42    Governor Pritzker, Harmon, and Welch sought, and the circuit court granted, dismissal of plaintiffs' complaints pursuant to section 2-619.1 of the Civil Code (*id.*). Section 2-619.1 allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain

defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). On appeal, a circuit court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo* (*Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402, 911 N.E.2d 1049, 1052 (2009)), and we may affirm the dismissal on any basis supported by the record (*Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051, 883 N.E.2d 575, 578 (2008)).

¶ 43                                    B. Jurisdiction

¶ 44          At the outset, we reject the contention from Harmon and Welch—a contention with which Governor Pritzker does not join—that the circuit court lacked "jurisdiction" to grant the requested declaratory relief. In support of their contention, Harmon and Welch argue the requested declarations concerning the validity of sections 2f-2 and 2f-13 of the Circuit Courts Act would not overrule the supreme court's order of recertification and, therefore, would not "aid in the termination of the controversy" and amount to an "advisory opinion." This argument, however, does not raise a jurisdictional issue but rather a justiciability issue, an issue which we will address below. See *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 22, 131 N.E.3d 112 ("Subject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs."); *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 35, 184 N.E.3d 233 ("The concept of justiciability is divided into different categories, including advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions."). Accordingly, we reject the unsupported contention that the circuit court lacked jurisdiction to grant the requested declaratory relief.

¶ 45                                    C. Justiciability

¶ 46     We turn next to the contention from Governor Pritzker, Harmon, and Welch that claims raised in plaintiffs' complaints are not justiciable. Specifically, they argue some of the claims are barred for lack of standing and being unripe. In addition, Harmon and Welch, as indicated above, argue all of the claims are barred because the requested declaratory relief would not aid in the termination of the controversy and amount to an advisory opinion.

¶ 47     Plaintiffs sought, amongst other relief which they have since been abandoned, declaratory relief pursuant to section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2020)). Section 2-701 allows circuit courts to, "in cases of actual controversy, make binding declarations of rights, having the force of final judgments." *Id.* "The standing requirement in a declaratory judgment action is established by demonstrating that an 'actual controversy' exists between adverse parties and that the plaintiff is interested in the controversy." *Cahokia Unit School District No. 187*, 2021 IL 126212, ¶ 36. An "actual controversy" in the declaratory judgment context "means a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (Internal quotation marks omitted.) *Id.* "The actual controversy requirement ensures that courts will not pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." (Internal quotation marks omitted.) *Id.*

¶ 48     First, Harmon and Welch argue all of the claims raised in plaintiffs' complaints are barred because the requested declarations concerning the validity of section 2f-2 or section 2f-13 of the Circuit Courts Act would not overrule the supreme court's order of recertification and, therefore, would not "aid in the termination of the controversy" and amount to an "advisory opinion." We disagree. While the circuit court may not have been able to overrule the supreme

- 11 -

court's order or direct that the order be ignored, the issuance of the requested declaratory relief—or an order dismissing the claims—resolves the controversy and allows an avenue for review. In fact, Harmon and Welch do not, on appeal, identify any other avenue in which the validity of sections 2f-2 and 2f-13 could be challenged. Accordingly, we reject the argument that all of the claims are barred because the requested declarations would not aid in the termination of the controversy and amount to an advisory opinion.

¶ 49        Second, Governor Pritzker, Harmon, and Welch assert the claims suggesting section 2f-13 of the Circuit Courts Act violates the circuit courts clause of our state constitution by limiting retention election to the judicial subcircuits are barred for lack of standing and for being unripe. We agree. Retention elections for judges elected in 2022 will not occur until 2028. See Ill. Const. 1970, art. VI, § 10 (circuit court judges serve six-year terms). Indeed, the complaints contain no allegations suggesting any judge, including Threlkeld or Sholar, has applied for retention and been denied the right to run in the circuit at large or any voter is being denied the right to cast an at-large vote for retention. Under these circumstances, none of the plaintiffs have standing to pursue their claims, nor are any of the claims ripe for review. Moreover, we note, those who are pursuing these claims fail to recognize that our courts, even if the claims were justiciable, would proceed under the well-established presumption that the legislature in enacting section 2f-13 acted in light of, and not inconsistent with, the provisions of the Illinois Constitution. *Gill v. Miller*, 94 Ill. 2d 52, 56, 445 N.E.2d 330, 332 (1983); compare Pub. Act 102-693 (eff. Jan. 7, 2022) (adding 705 ILCS 35/2f-13), with Ill. Const. 1970, art. VI, § 12(c). On these grounds, we find the claims suggesting section 2f-13 violates the circuit courts clause of our state constitution by limiting retention election to the judicial subcircuits were properly dismissed.

¶ 50        Third, Governor Pritzker, Harmon, and Welch assert the claim suggesting section 2f-2 of the Circuit Courts Act is "invalid" because compliance is impossible as a result of conflicting provisions in sections 40 and 45 of the Judicial Circuits Districting Act is barred for lack of standing. We agree. McConchie, who is pursuing this claim as a voter, is not charged with implementing section 2f-2. Moreover, we note it is difficult to imagine any person tasked with implementing section 2f-2 would find the apparent scrivener error relating to sections 40 and 45 would render compliance with section 2f-2 impossible. On this ground, we find the claim suggesting section 2f-2 is "invalid" because compliance is impossible was properly dismissed.

¶ 51        Last, Governor Pritzker, Harmon, and Welch assert Madison County lacks standing under the doctrine of legislative supremacy to brings its claims. We find they have not met their burden of proof. See *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 29, 181 N.E.3d 790 ("[T]he defendant bears the burden to plead and prove lack of standing."). On appeal, Govern Pritzker, Harmon, and Welch distinguish a case cited by Madison County and then point out that Madison County has not cited any authority for the proposition that a county may sue the State. They fail, however, to address a second case cited by Madison County, *Jahn v. Troy Fire Protection District*, 255 Ill. App. 3d 933, 935-38, 627 N.E.2d 1216, 1218-19 (1994), *aff'd on other grounds*, 163 Ill. 2d 275, 279, 644 N.E.2d 1159, 1161 (1994). While the appellate court's decision in *Jahn* is arguably distinguishable and its standing analysis is questionable in light of the supreme court's decision that followed it, the burden was on Governor Pritzker, Welch, and Harmon to address these issues. Moreover, we note Madison County's standing in this action is not determinative on any issue because at least one other plaintiff with undisputed standing has presented claims on the same issues. Under these circumstances, we decline to find Madison

- 13 -

County lacks standing under the doctrine of legislative supremacy to brings its claims.

¶ 52                    D. Remaining Constitutional Claims

¶ 53        We now turn to plaintiffs' contentions that their complaints sufficiently stated claims suggesting sections 2f-2 and 2f-13 of the Circuit Courts Act, or at least a portion thereof, are unconstitutional. Specifically, plaintiffs assert their complaints sufficiently stated claims that sections 2f-2 and 2f-13 violate (1) the circuit courts clause of our state constitution by eliminating all at-large judgeships and (2) the special legislation clause of our state constitution by creating a scheme applicable only to the Third and Nineteenth Judicial Circuits. In addition, McConchie contends his complaint sufficiently stated a claim that section 2f-2 violates the free and equal clause of our state constitution by creating unequal voting strength amongst similarly situated voters.

¶ 54        When considering a constitutional challenge to a statute, we begin with the principles that all statutes carry "a strong presumption of constitutionality," and the party challenging the statute bears the burden of rebutting that presumption. *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 17, 137 N.E.3d 745. In addition, we must recognize "the constitution is not regarded as a grant of powers to the legislature but is a limitation upon its authority; the legislature may enact any legislation not expressly prohibited by the constitution." *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 525, 558 N.E.2d 89, 94 (1990). Ultimately, it is the duty of our courts "to uphold the constitutionality of a statute if reasonably possible." *Piccioli*, 2019 IL 122905, ¶ 17.

¶ 55        First, plaintiffs assert their complaints sufficiently stated claims that sections 2f-2 and 2f-13 of the Circuit Courts Act violate the circuit courts clause of our state constitution by

eliminating all at-large judgeships. Governor Pritzker, Harmon, and Welch disagree, contending the circuit courts clause does not prohibit the elimination of all at-large judgeships.

¶ 56　　　　To resolve this issue, we must determine the scope of the circuit courts clause of our state constitution, a matter of constitutional interpretation. "The construction of constitutional provisions is governed by the same general principles that apply to statutes." *Kanerva v. Weems*, 2014 IL 115811, ¶ 36, 13 N.E.3d 1228. Our primary objective is "to determine and effectuate the common understanding of the citizens who adopted [the constitutional provision]." *Id.* To accomplish this objective, we look to the plain language used as it was understood when the constitution was adopted. *Id.* "Where the language of a constitutional provision is unambiguous, it will be given effect without resort to other aids for construction." *Id.*

¶ 57　　　　The circuit courts clause, as set forth in article VI, section 7, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 7), provides as follows:

　　　　"(a) The State shall be divided into Judicial Circuits consisting of one or more counties. The First Judicial District shall constitute a Judicial Circuit. The Judicial Circuits within the other Judicial Districts shall be as provided by law. Circuits composed of more than one county shall be compact and of contiguous counties. The General Assembly by law may provide for the division of a circuit for the purpose of selection of Circuit Judges and for the selection of Circuit Judges from the circuit at large.

　　　　(b) Each Judicial Circuit shall have one Circuit Court with such number of Circuit Judges as provided by law. Unless otherwise

provided by law, there shall be at least one Circuit Judge from each county. In the First Judicial District, unless otherwise provided by law, Cook County, Chicago, and the area outside Chicago shall be separate units for the selection of Circuit Judges, with at least twelve chosen at large from the area outside Chicago and at least thirty-six chosen at large from Chicago.

(c) Circuit Judges in each circuit shall select by secret ballot a Chief Judge from their number to serve at their pleasure. Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court."

¶ 58 The dispute in this case centers around the following language from the circuit courts clause: "The General Assembly by law may provide for the division of a circuit for the purpose of selection of Circuit Judges and for the selection of Circuit Judges from the circuit at large." *Id.* The parties, while agreeing this language is unambiguous, present two conflicting interpretations: (1) the General Assembly may provide for the division of a circuit for the selection of circuit judges, and it may provide for the selection of circuit judges from the circuit at large, and (2) the General Assembly may provide for the division of a circuit for the selection of circuit judges and shall provide for the selection of circuit judges from the circuit at large.

¶ 59 We find the first interpretation of the relevant language from the circuit courts clause, the interpretation offered by Governor Pritzker, Harmon, and Welch, to be reasonable: the

- 16 -

General Assembly may provide for the division of a circuit for the selection of circuit judges, and it may provide for the selection of circuit judges from the circuit at large. That is, the General Assembly has no obligation to do both things in every circuit. Stated differently, the constitution does not prohibit the General Assembly from having a judicial circuit be comprised of only subcircuit resident judges. See *People ex rel. Chicago Bar Ass'n*, 136 Ill. 2d at 525 ("the legislature may enact any legislation not expressly prohibited by the constitution").

¶ 60 Our supreme court in *Thies v. State Board of Elections*, 124 Ill. 2d 317, 324, 529 N.E.2d 565, 569 (1988), interpreted this same language from the circuit courts clause in a similar fashion—"it is appropriate to construe the word 'and' as an 'or' in article VI, section 7(a), in order to more clearly state the proper meaning of the provision." While we recognize the factual circumstances of this case are distinguishable from those in *Theis*, we find the supreme court's interpretation of the language from the circuit courts clause both compelling and controlling.

¶ 61 Plaintiffs express concern that our interpretation could lead to absurd results. Specifically, they suggest the General Assembly under our interpretation could eliminate all judgeships from a circuit, design a circuit with one judge whose election is confined to only a smaller division of the circuit, or assign all judges in a circuit to a particular subcircuit. Plaintiffs' concern is unwarranted. To begin with, we find plaintiffs' concern is based on entirely speculative scenarios. Moreover, plaintiffs fail to recognize any attempt by the General Assembly to proceed as they suggest would be considered not only in light of language interpreted in this case but also the other language of the constitution.

¶ 62 We, therefore, conclude sections 2f-2 and 2f-13 of the Circuit Courts Act do not violate the circuit courts clause of our state constitution by eliminating all at-large judgeships.

Because we reach this conclusion based upon the constitution's plain language, we need not consider extrinsic sources such as the drafting history. Accordingly, we find plaintiffs' claims were properly dismissed.

¶ 63　　　　Next, plaintiffs assert their complaints sufficiently stated claims that sections 2f-2 and 2f-13 of the Circuit Courts Act violate the special legislation clause of our state constitution by creating a scheme applicable only to the Third and Nineteenth Judicial Circuits. Governor Pritzker, Harmon, and Welch disagree, contending plaintiffs' claims have no legal basis because they have not shown a violation of the circuit courts clause of our state constitution.

¶ 64　　　　Our supreme court in both *Bridges v. State Board of Elections*, 222 Ill. 2d 482, 493-94, 856 N.E.2d 445, 451 (2006), and *Hirschfield v. Barrett*, 40 Ill. 2d 224, 233, 239 N.E.2d 831, 836 (1968), found the special legislation clause may not be used to upset legislation enacted in compliance with the judicial article of our state constitution.

¶ 65　　　　Recognizing the obstacle *Brides* and *Hirschfield* pose to their claims, plaintiffs maintain their claims are viable because the General Assembly "exceeded its authority under [the circuit courts clause of our state constitution] by eliminating every at-large judgeship." For the reasons previously discussed, the legislature did not, however, exceed its authority by eliminating all at-large judgeships. Absent any other argument, we find *Bridges* and *Hirschfield* precludes plaintiffs' claims. Accordingly, we find plaintiffs' claims were properly dismissed.

¶ 66　　　　Last, McConchie asserts his complaint sufficiently stated a claim that section 2f-2 of the Circuit Courts Act violates the free and equal clause of our state constitution by creating unequal voting strength amongst similarly situated voters. Governor Pritzker, Harmon, and Welch disagree, contending section 2f-2 does not create unequal voting strength amongst similarly

- 18 -

situated voters.

¶ 67    It is undisputed the free and equal clause of our state constitution requires similarly situated voters to have equal voting strength in judicial elections. See Ill. Const. 1970, art. III, § 3 ("All elections shall be free and equal."); see also *Moran v. Bowley*, 347 Ill. 148, 162-63, 179 N.E. 526, 531 (1932) ("Elections are equal when the vote of each voter is equal in its influence upon the result to the vote of every other elector—where each ballot is as effective as every other ballot."). The dispute, instead, concerns whether section 2f-2 of the Circuit Courts Act creates unequal voting strength amongst similarly situated voters.

¶ 68    McConchie contends section 2f-2 of the Circuit Courts Act creates unequal voting strength amongst similarly situated voters in that it (1) allows some voters who live in heavily democratic subcircuits to vote for more judges and (2) creates subcircuits of unequal population. We disagree. The purported disparities amongst voters of different judicial subcircuits do not create unequal voting strength amongst similarly situated voters. That is, disparities amongst voters of different judicial subcircuits do not implicate the free and equal clause of our state constitution. See *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶¶ 75-94, 105 N.E.3d 106 (holding the free and equal clause of our state constitution was applicable only if the right to vote in a particular election existed). Accordingly, we find McConchie's claim was properly dismissed.

¶ 69    E. Remaining Statutory Claim

¶ 70    Finally, we turn to McConchie's contention that his complaint sufficiently stated a claim suggesting section 2f-2 of the Circuit Courts Act (Pub. Act 102-693 (eff. Jan. 7, 2022) (amending 705 ILCS 35/2f-2)) violates its expressed requirement that subcircuits be "substantially

equal in population" by having subcircuit populations deviate from the ideal population by as much as 11.24%. Governor Pritzker, Harmon, and Welch do not specifically respond to this contention.

¶ 71     Our review of McConchie's amended complaint does not evince any claim suggesting section 2f-2 of the Circuit Courts Act violates its expressed requirement that subcircuits be substantially equal in population. Instead, McConchie's complaint only seeks declaratory relief concerning the constitutionality of section 2f-2. On this ground alone, the dismissal of McConchie's complaint may be affirmed.

¶ 72     In any event, our supreme court in *Bridges*, 222 Ill. 2d at 493-94, addressed and rejected a similar claim, stating as follows:

> "The General Assembly has plenary power to determine the number of judges in each circuit. It exercised this power more than 50 years ago when it enacted the precursor to section 2 [of the Circuit Courts Act] and put in place a default population rule. [Citation.] Since 1975, the parameters of the default rule have remained the same, despite obvious growth in certain circuits. [Citation.] The legislature has freely departed from the default rule with impunity, adding judgeships in subsequent acts as the need for them arose and the resources to fund them appeared. [Citation.] Likewise, section 2 and its default rule was amended by Public Act 94-727. The legislature chose to determine the number of circuit judges in a manner besides population; this was the legislature's prerogative ***."

- 20 -

¶ 73　　　　Accordingly, even if McConchie's claim was included in his complaint, we would find it was properly dismissed given the above analysis from *Bridges*. That is, it was the legislature's prerogative to deviate from its own, undefined requirement that subcircuits be "substantially equal in population." *Cf.* Ill. Const. 1970, art. VI, § 7 (only requiring circuits composed of more than one county be "be compact and of contiguous counties").

¶ 74　　　　　　　　　　　　　III. CONCLUSION

¶ 75　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 76　　　　Affirmed.

2022 IL App (4th) 220169

| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 2022-CH-000010; the Hon. Ryan M. Cadagin, Judge, presiding. |

| **Attorneys for Appellant:** | Thomas A. Haine, State's Attorney, of Edwardsville (Emily Johnson Nielson, Assistant State's Attorney, of counsel), for appellant Madison County, Illinois. |
| | Christina Wiley, of Bethalto, appellant *pro se*. |
| | Phillip A. Luetkehans, Brian J. Armstrong, and Jessica G. Nosalski, of Luetkehans, Brady, Garner & Armstrong, LLC, of Itasca, and James L. Craney, of Craney Law Group LLC, of Edwardsville, for other appellants. |

| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellee Jay Robert "J.B." Pritzker. |
| | Adam R. Vaught, Special Assistant Attorney General, of Kilbride & Vaught, LLC, of LaGrange, and Michael J. Kasper, Special Assistant Attorney General, of Kasper & Nottage P.C., and Devon C. Bruce, Special Assistant Attorney General, of Power Rogers, LLP, both of Chicago, for other appellees. |