NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250395-U

NO. 4-25-0395

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CALVIN CHRISTIAN III, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| MISTY BUSCHER, in Her Official Capacity as Mayor | ) | No. 25MR15 |
| of Springfield, Illinois; CHARLES "CHUCK" | ) | |
| REDPATH, in His Official Capacity as City Clerk of | ) | |
| Springfield, Illinois; and THE CITY OF SPRINGFIELD, | ) | |
|     Defendants | ) | |
| | ) | |
| (Charles "Chuck" Redpath, in His Official Capacity as | ) | Honorable |
| City Clerk of Springfield; and the City of Springfield, | ) | Adam Giganti, |
| Defendants-Appellees). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Vancil and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding plaintiff had not established any basis to support the relief requested on appeal.

¶ 2     Plaintiff, Calvin Christian III, appeals from the circuit court's judgment dismissing his complaint against defendants, Misty Buscher, in her official capacity as mayor of Springfield, Illinois, Charles "Chuck" Redpath, in his official capacity as city clerk of Springfield, and the City of Springfield (City). On appeal, plaintiff argues this court should reverse the court's dismissal of his counts for declaratory relief against Redpath and the City and find Springfield ordinance No. 001-01-25 (eff. Jan. 7, 2025), which appointed Redpath as city clerk, failed to receive the six votes required for passage and, therefore, was invalid. For the reasons that follow, we affirm the circuit

court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4            On January 7, 2025, the Springfield City Council (City Council) held a special meeting, at which it voted on the appointment of then-Alderman Redpath to the position of city clerk, which had recently become vacant. The 10 elected alderman and the mayor were present at the meeting. The City Council voted five "yea," three "nay," and two "present"; the mayor did not vote. Redpath voted "yea." The mayor announced the measure had passed. Ordinance No. 001-01-25, which appointed Redpath as city clerk, was signed by the mayor, and Redpath was sworn in as city clerk.

¶ 5            On January 13, 2025, plaintiff, a citizen proceeding *pro se*, filed a multicount complaint against defendants for declaratory and injunctive relief, which he amended on January 22, 2025. One of the counts sought a declaration that ordinance No. 001-01-25 failed to receive the six votes required for passage and, therefore, was invalid.

¶ 6            On January 30, 2025, Buscher filed a motion to dismiss the counts alleged against her in plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)), which the circuit court granted on February 14, 2025.

¶ 7            On March 17, 2025, Redpath and the City filed a joint motion to dismiss the counts alleged against them in plaintiff's complaint pursuant to section 2-619.1 of the Code (*id.* § 2-619.1.).

¶ 8            On April 10, 2025, plaintiff filed a motion for leave to amend his complaint to add a count for *quo warranto* relief.

¶ 9            On April 11, 2025, Redpath and the City filed a response objecting to plaintiff's motion for leave to amend his complaint. In part, they invited the circuit court to resolve the issue

concerning the sufficiency of the vote count because the arguments would be the same regardless of whether declaratory or *quo warranto* relief was sought.

¶ 10     Also on April 11, 2025, the circuit court conducted a hearing. With respect to plaintiff's motion for leave to amend, Redpath and the City argued, in part, "[A]mending the complaint to include [a count for *quo warranto* relief] would not change the facts of the case or the arguments that would be heard, it's just a different procedural mechanism to get to the issue [of the sufficiency of the vote count]." The court ultimately denied the motion for leave to amend and then granted the joint motion to dismiss.

¶ 11     This appeal followed.

¶ 12                    II. ANALYSIS

¶ 13     On appeal, plaintiff, now proceeding with the assistance of counsel, argues this court should reverse the circuit court's dismissal of his counts for declaratory relief against Redpath and the City and find ordinance No. 001-01-25 invalid because it failed to receive the six votes required for passage. Redpath and the City disagree.

¶ 14     As an initial matter, Redpath and the City invite this court to affirm the circuit court's judgment because plaintiff "seeks, in essence, an action for *quo warranto*," which, they contend, he lacks standing to bring. We decline the invitation. Redpath and the City invited the court to resolve the issue concerning the sufficiency of the vote count regardless of whether declaratory or *quo warranto* relief was sought. Under these circumstances, we decline to affirm on this basis.

¶ 15     Redpath and the City sought, and the circuit court granted, dismissal of plaintiff's complaint pursuant to section 2-619.1 of the Code (*id.*). "Section 2-619.1 allows a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with

- 3 -

a section 2-619 motion to dismiss based upon certain defects or defenses." (Internal quotation marks omitted.) *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42. A dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Id.*

¶ 16    In support of his request for a reversal of the circuit court's dismissal and a finding that ordinance No. 001-01-25 failed to receive the six required votes for passage, plaintiff's primary contention is that the two "present" votes should not have been counted with the members of the majority who did vote on the question involved. Plaintiff cites Robert's Rules of Order (12th ed. 2020), which, he claims, provides that "present" votes should not be counted in such a way. He also cites the electronic voting record from the special meeting, which indicates the measure had failed. Additionally, plaintiff, in support of the requested relief, contends Redpath's vote should not have been counted because he was prohibited from voting for himself.

¶ 17    In 1982, the supreme court decided *Prosser v. Village of Fox Lake*, 91 Ill. 2d 389 (1982). In *Prosser*, the Village of Fox Lake required the " 'concurrence of a majority' " of its six-member board to pass ordinances. *Id.* at 392. The votes on the ordinances at issue were each three " 'aye' " and one " 'nay.' " *Id.* One member was present but did not vote, and another member was absent. *Id.* The ordinances were deemed approved. *Id.* On review, the supreme court affirmed the finding that the ordinances passed, concluding the member who was present and failed to vote was correctly counted with the majority "yea" votes. *Id.* at 396. The court explained:

"The effect of voting to 'abstain,' or to 'pass,' or voting 'present' or of refusing to vote when present at a meeting depends on whether 'the affirmative vote' of a majority or 'the concurrence' of a majority, of either the quorum or of all members then holding office, is required for passage. If 'the affirmative vote' of a majority of either standard is required (*e.g.*, Ill. Rev. Stat. 1979, ch. 24, par.

- 4 -

11-74-6), then nothing less than a majority of 'yea' or 'aye' votes will result in passage. An attempt to vote to 'abstain' or in any manner other than 'yea' or 'nay,' or a failure to vote shall be considered to have the effect of a 'nay' vote. Where the 'concurrence' of a majority is required for passage, the holding in most of the jurisdictions where the issue has been considered is that a vote of 'pass,' 'present,' or 'abstain' or a failure to vote when present constitutes an acquiescence or concurrence with the members of the majority who did vote on the question involved. This is described in The Law of Local Government Operations: 'It is a general rule that those members present at a meeting consisting of a quorum must vote against a proposal in order to defeat it. If members are present and refuse to vote, they are deemed to have consented to the majority decision.' (Rhyne, The Law of Local Government Operations sec. 5.6, at 77 (1980). (See also Annot., 63 A.L.R.3d 1072, 1083 (1975); Froehlich, *Effect of Council Members Voting 'Abstain,' 'Pass,' or 'Present'*,*'* 59 Ill. Municipal Rev. 15 (June 1980).) This holding of a majority of jurisdictions developed from the common law rule pertaining to elections announced in *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685: 'Whenever electors are present, and do not vote at all (as they have done here,) "they virtually acquiesce in the election made by those who do." ' " *Id.* at 395.

¶ 18        Some five years after *Prosser* was decided, in 1987, the City was established by a consent decree approved by the United States District Court for the Central District of Illinois. See *McNeil v. City of Springfield, Illinois*, No. 85-2365 (C. D. Ill. 1987). Section 2-4 of the Consent Decree addresses vacancies of office and states: "If a vacancy occurs in the office of the *** City

Clerk ***, the City Council, within 60 days thereafter, shall appoint a person to fill the vacancy for the remainder of the unexpired term." *Id.* That section further states: "An alderman shall be eligible for appointment to fill a vacancy in the Office of *** City Clerk *** and may participate in the vote taken to fill the vacancy." *Id.*

¶ 19 Section 4-8 of the Consent Decree addresses the passage of ordinances and states:

> "The passage of all ordinances for whatever purpose *** shall require the concurrence of a majority of all members then holding office on the City Council, including the Mayor, unless otherwise expressly provided by the Municipal Code or any other act or ordinance governing the passage of any ordinance, resolution, or motion." *Id.*

This requirement was further codified in section 31.11 of the 1988 Springfield Code of Ordinances (Springfield Code, § 31.11 (1988)), which states:

> "The passage of all ordinances for whatever purpose *** shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, unless otherwise expressly provided by the Municipal Code or any other act or ordinance governing the passage of any ordinance, resolution, or motion."

¶ 20 The City adopted governing rules of order in the 1988 Springfield Code of Ordinances. Section 31.08 states:

> "The rules of order and parliamentary practice comprised in the current edition of Robert's Rules of Order shall govern the council in all cases to the extent not inconsistent with the provisions of this Code or rules of procedure adopted by the council." *Id.* § 31.08.

¶ 21        Robert's Rules of Order, a manual of parliamentary procedure, contains guidance for determining a voting result. See Robert's Rules of Order § 44 (12th ed. 2020). Section 44:1 addresses situations where the applicable voting standard is a majority vote. *Id.* § 44:1. It states:

> "The word *majority* means 'more than half'; and when the term *majority vote* is used without qualification—as in the case of the basic requirement—it means more than half of the votes cast by persons entitled to vote, excluding blanks or abstentions, at a regular or properly called meeting." (Emphases in original.) *Id.*

Section 44:3, in turn, addresses situations where the applicable voting standard is a two-thirds vote. *Id.* § 44:3. It states:

> "A *two-thirds vote*—when the term is unqualified—means at least two thirds of the votes cast by persons entitled to vote, excluding blanks or abstentions, at a regular or properly called meeting." (Emphasis in original.) *Id.*

¶ 22        In this case, we conclude plaintiff has not established any basis to support the relief sought on appeal—a reversal of the circuit court's dismissal and a finding that ordinance No. 001-01-25 is invalid because it failed to receive the six required votes for passage. First, with respect to his primary contention that the two "present" votes should not have been counted with the members of the majority who did vote on the question involved, plaintiff fails to point to anything showing the general rule set forth by the supreme court in *Prosser* is inapplicable. While the City—unlike the Village of Fox Lake in *Prosser*—adopted Robert's Rules of Order, the sections cited by plaintiff in Robert's Rules of Order, sections 44:1 and 44:3, offer no guidance where the applicable voting standard is the concurrence of the majority, the standard addressed in *Prosser* and maintained by the City. Indeed, *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 1047 (1999), relied upon by plaintiff, is distinguishable, in that the applicable standard there

- 7 -

was a "simple majority" of an entire county board, not a concurrence of the majority. Plaintiff, furthermore, fails to provide any legal basis to conclude the electronic voting record from the special meeting is authoritative on the issue. And second, with respect to his contention that Redpath's vote should not have been counted, plaintiff does not explain why, even if that was true, it would entitle him to the relief sought on appeal—the vote would still be six without Redpath's vote. In fact, plaintiff fails to address this point in his reply brief, despite Redpath and the City raising it in their appellee brief. See *In re Linda B.*, 2017 IL 119392, ¶ 43 ("It is well established that, on appeal, the party claiming error has the burden of showing any irregularities that would justify reversal.").

¶ 23     We, in so concluding, note plaintiff asserts allowing "present" votes to be counted with the members of the majority who did vote on the question involved creates uncertainty, misunderstanding, and potential chaos in the legislative process. He invites us, for the first time in his reply brief, to take judicial notice of a news article, which, he claims, supports his assertion. He also, for the first time in his reply brief, asserts *Prosser* has a "convincing dissent," which, he suggests, shows it was not "correctly decided." Plaintiff's assertions are nonstarters, and we decline to take judicial notice of the news article. It is not the role of this court to reconsider a decision from the supreme court, nor is it our role to consider whether an alternative rule should be implemented to avoid purported negative policy ramifications from following a general rule set forth by the supreme court. If plaintiff believes the rule from *Prosser* has negative policy ramifications, he should advocate for a change to the applicable voting standards and/or governing rules before the City Council, not this court.

¶ 24                         III. CONCLUSION

¶ 25     For the reasons stated, we affirm the circuit court's judgment.

¶ 26        Affirmed.